[Civ. No. 17901.   Second Dist., Div. Two.   Dec. 20, 1950.]

MILDRED M. GOUGH, Appellant, v. LLOYD GOUGH, Respondent.

LLOYD GOUGH, Respondent, v. MILDRED M. GOUGH, Appellant.

William P. Gray, Gray, Binkley & Pfaelzer, Sidney H. Wall and O'Melveny & Myers for Appellant.

Margolis & McTernan and John W. Porter for Respondent.

MOORE, P. J.—The parties to this action were married in New York in 1929 but have lived separate and apart since 1934. Six years after they parted the wife obtained a decree of separate maintenance in New York by reason of respondent's desertion and wilful neglect. By the judgment the husband was ordered to pay $40 per week for the wife's support. After years had elapsed during which the husband did not make the payments required of him by the New York judgment, the wife instituted this action to recover the unpaid amounts that had accrued. The husband countered with an action for divorce on the ground of extreme cruelty. The wife entered her cross-complaint to the husband's action demanding a divorce on the grounds of wilful neglect and desertion by the husband. The judgment awarded the husband a divorce and denied the wife recovery of the unpaid installments of support money under the New York judgment.

In refusing to enforce the New York judgment as to the unpaid installments of support money the trial court adopted the theory that the New York decree was not final and therefore not entitled to full faith and credit. The determinative question then is whether the New York decree was subject to modification by the courts of that state, since it is well settled that in the absence of a power of modification such an order for the payment of alimony or support money, rendered by a court of competent jurisdiction, must be recognized by all states under the full faith and credit clause of the federal Constitution, as to all accrued installments. (*Sistare v. Sistare*, 218 U.S. 1, 16 [30 S.Ct. 682, 54 L.Ed. 905]; *Bie-*

*wend* v. *Biewend,* 17 Cal.2d 108, 110 [109 P.2d 701, 132 A.L.R. 1264] ; *Beard* v. *Beard,* 57 Cal.App.2d 579, 581 [135 P.2d 9].)

Power to modify alimony and support decrees is given the courts of New York by section 1170* of the Civil Practice Act of that state. This statute as it appeared at the time appellant secured her decree had been uniformly interpreted as not being retroactive in operation and any installments of alimony which had accrued prior to an application for modification were held to be vested and not subject to variance. (*Sistare* v. *Sistare, supra;* *Harris* v. *Harris,* 259 N.Y. 334 [182 N.E. 7] ; *Krauss* v. *Krauss,* 127 App.Div. 740 [111 N.Y.S. 788] ; *Brice* v. *Brice,* 225 App.Div. 453 [233 N.Y.S. 366] ; *Smith* v. *Smith,* 255 App.Div. 652 [9 N.Y.S.2d 188].) As late as 1939 the California courts construed the New York law to be in accord with our own and held that a judgment for alimony is not subject to modification as to sums already accrued and past due. (*Parnham* v. *Parnham,* 32 Cal.App.2d 93, 98 [89 P.2d 189] ; *Barns* v. *Barns,* 9 Cal.App.2d 427, 430 [50 P.2d 463] ; *Bruton* v. *Tearle,* 117 Cal.App. 696, 698 [4 P.2d 623] ; *Cummings* v. *Cummings,* 97 Cal.App. 144, 147 [275 P. 245].)

However, there is also now a line of decisions in New York apparently permitting retroactive modification of an alimony decree. The Court of Appeals in *Kirkbride* v. *Van Note,* 275 N.Y. 244 [9 N.E.2d 852, 112 A.L.R. 243] (1937) and *Karlin* v. *Karlin,* 280 N.Y. 32 [19 N.E.2d 669] (1939), laid the foundation from which the lower New York courts inferred such a discretionary power. In the cited decisions the court annulled unpaid accrued alimony payments where a divorced wife had remarried without her former husband's knowledge. Such cancellation was permitted as of the date of the remarriage. But the source of the court's power to annul such accrued payments was section 1159 of the Civil Practice Act which specifically provided that upon such a remarriage the court "must modify such final judgment by annulling the provisions directing payment of money for the support of the plaintiff."

---

*"Where an action for divorce or separation is brought by either husband or wife, the Court . . . must give either in the final judgment, or by one or more orders, made from time to time before final judgment, such directions as justice requires . . . for the support of the plaintiff [if she be the wife]. The Court, by order, upon the application of either party to the action, . . . after due notice to the other . . . at any time after final judgment, may annul, vary or modify such directions . . ."

In the Karlin case the court cited the Kirkbride decision and affirmed an order modifying a support decree *nunc pro tunc* as of the date it became final in order to conform the judgment with an agreement that had been entered into by the parties for the wife's support. The court found that she was wrongfully seeking to ignore such agreement by applying for enforcement of the decree.

In reliance upon the two cited decisions some of the lower courts of New York expressed the view that they did have the power to make retroactive reductions in alimony. (See *McCanliss* v. *McCanliss*, 268 App.Div. 138 [49 N.Y.S.2d 289]; *Bregoff* v. *Bregoff*, 269 App.Div. 902 [56 N.Y.S.2d 268]; *Cunningham* v. *Cunningham*, 261 App.Div. 973 [25 N.Y.S.2d 933]; *Probst* v. *Probst*, 259 App.Div. 1090 [21 N.Y.S.2d 294].) In 1946 the United States Supreme Court in *Griffin* v. *Griffin*, 327 U.S. 220 [66 S.Ct. 556, 90 L.Ed. 635], indicated that the New York courts could reduce or modify accrued installments of alimony. The court distinguished its former opinion in the Sistare case on the ground that the New York statutes had significantly changed since that decision. This assumption appears erroneous, as in *Waddey* v. *Waddey*, 290 N.Y. 251 [49 N.E.2d 8] (1943) it was pointed out that the provisions of section 1170 of the Civil Practice Act had been "in effect under one or another Code of Civil Procedure or Civil Practice Act . . . since 1895." Moreover, the Law Revision Commission of the State of New York in its report of this problem stated, "Despite the opinion of the U. S. Supreme Court in the Griffin case it is difficult to find any substantial change, since the amendment of 1895, on the part of these statutes which grants discretion to modify alimony." (State of New York Law Revision Commission, Legislative Document (1948), No. 65 (E), p. 29, footnote 23-a.)

It is thus apparent that there is a definite confusion among the New York authorities. Apparently, however, *Waddey* v. *Waddey* is the latest expression of the Court of Appeals on the retroactive effect of section 1170 although this section was not directly concerned therein. The court reaffirmed the theory that accrued alimony is a "vested property right" and stated that the provisions of a statute will not be applied retroactively where they are capable of any other construction, unless the intent of the Legislature clearly appeared to the contrary. It is true that section 1170 was amended in 1948 to make the statute retroactive but as pointed out in the Waddey decision that amendment can have no effect upon the right

to support money awarded by a decree that antedates the amendment. The Law Revision Commission commented that this decision indicates a trend of reasoning that accrued installments of alimony are irreducible and that the construction of section 1170 by the Court of Appeals does not lean toward the view adopted by the Supreme Court of the United States in the Griffin decision. Also, in *Treherne-Thomas* v. *Treherne-Thomas*, 267 App.Div. 509 [46 N.Y.S.2d 679] (1944), the view of the early Harris case was followed with the declaration that installments of alimony created vested rights which the court has no power to modify.

In view of the unsettled state of the New York law on the subject we have no recourse but to follow the holdings of the California courts and of the New York Commission and rely on the settled rule of construction that statutes will be applied only prospectively in the absence of a clear expression of legislative intent to the contrary. From such authorities it is inescapable that the trial court erred in refusing to give full faith and credit to the New York judgment as to the accrued and unpaid support payments found to be in the amount of $11,989.25.

Furthermore, the fact that Civil Practice Act 1170 was amended in 1948 thereby extending the authority of the New York courts under that section to unpaid accrued installments cannot alter this decision. The Waddey case squarely held that a statute authorizing a reduction in support money could have no effect on alimony rights granted under a decree obtained before the enactment of such provision. The opinion stated, "even though the Legislature had indicated by express declaration its intent that the act have retrospective application, it would not be effective as to decrees entered prior to the date it went into effect since the right of appellant to alimony became a vested property right upon the entry of the judgment and could not be affected by subsequent legislation."

Also it appears that, assuming for the purposes of argument that the New York decree was not entitled to full faith and credit, the trial court should have given judgment for the appellant as a matter of comity. Under the New York decisions which have recognized a power of modification such has only been exercised when a substantial change in the circumstances of the parties has been disclosed. (See *Cunningham* v. *Cunningham*, 261 App.Div. 973 [25 N.Y.S.2d 933], where children had reached majority and the husband's income had been reduced from $7,000 to $5,000; *Probst* v. *Probst*,

259 App.Div. 1090 [21 N.Y.S.2d 294], where child had been supported by others; *Frost* v. *Frost*, 189 Misc. 133 [71 N.Y.S. 2d 438], and *Kahler* v. *Searl*, 259 App.Div. 729 [18 N.Y.S.2d 246], wherein children had attained majority.) No such showing has been made herein and as the New York law is not in conflict with the policy of this forum the judgment should be enforced on principles of comity. (*Biewend* v. *Biewend*, 17 Cal.2d 108, 113 [109 P.2d 701, 132 A.L.R. 1264]; *Barns* v. *Barns*, 9 Cal.App.2d 427, 430 [50 P.2d 463].)

█ The trial court's admission over objection of evidence of the conduct of the parties prior to the 1940 decree was in effect to rule that such judgment is not res judicata of the issue of appellant's innocence and respondent's guilt as of that date. The doctrine of res judicata is clearly applicable to the situation presented by the pleadings and the proof herein. The parties here are the identical litigants who were before the New York court in 1940. The husband's desertion and wilful neglect were established then and the decree entered is a bar to a second suit thereon as to issues actually determined or necessarily involved. (*Krier* v. *Krier*, 28 Cal.2d 841, 843 [172 P.2d 681]; *Lynn* v. *Cable*, 95 Cal.App.2d 696, 699 [213 P.2d 521]; *Steiner* v. *Thomas*, 94 Cal.App.2d 655, 660 [211 P.2d 321]; *Quagelli* v. *Quagelli*, 99 Cal.App. 172, 175 [277 P. 1089].) Therefore, the finding that the husband did not at any time either desert appellant or fail to provide for her is contrary to law.

█ While it is true that the husband could not have pleaded a cause of action for divorce in New York on the ground of extreme cruelty, he could have properly alleged it as a defense to the wife's suit for separate maintenance. Therefore, the finding that the wife treated respondent with extreme cruelty cannot be supported insofar as it is based on her alleged conduct prior to 1940 for the reason that it is implicit in the New York decree granting appellant permanent separation and support that she was there found not to be guilty of extreme cruelty. (See *Davis* v. *Davis*, 56 Wyo. 524 [111 P.2d 124].) "If the matter alleged in the second action is within the scope of the first and is so relevant to the issues that it could have been presented in the former action, the judgment in the prior bars the maintenance of the second action even though it is not specially pleaded. Were the rule otherwise, a party might designedly withhold issues and litigate them in consecutive lawsuits." (*Steiner* v. *Thomas, supra.*)

Respondent contends that the New York action was tried as a default except as to the issue of alimony. However, the New York decree recites on its face that the husband appeared by his attorney, that proofs were presented and that he admitted in open court the allegations of abandonment and nonsupport.

■ It is also argued that appellant waived any benefit of the doctrine of res judicata by failing to plead the New York decree in either her answer or cross-complaint in the divorce action. The answer to such contention is that the New York judgment was not a complete bar to respondent's suit for divorce as he was still free to prove acts of cruelty occurring after 1940. (*Comfort* v. *Comfort*, 17 Cal.2d 736, 744 [112 P.2d 259].) When a prior adjudication is relied upon merely as conclusive evidence as to some fact constituting either matter of defense or an element of a cause of action and is not a complete bar to the action, the former judgment need not be pleaded. (15 Cal.Jur., Judgments, § 230; *Higuera* v. *Corea*, 168 Cal. 788 [145 P. 529]; *Stockton* v. *Knock*, 73 Cal. 425 [15 P. 51]; 30 Am.Jur., Judgments, § 256; 2 Freeman, Judgments, 5th ed. § 798.)

■ Moreover, no waiver resulted by appellant's pleading that respondent treated her cruelly and deserted her prior to 1940. Such allegations were necessary in order to state a cause of action, and the New York decree was admissible as proof of such allegations. ■ Also, when appellant herself introduced evidence of the parties' conduct prior to 1940 no waiver resulted inasmuch as she was forced to present such proof to rebut the testimony of respondent previously introduced over her objection.

■ The finding of appellant's extreme cruelty is thus stripped of support except as to evidence of her conduct subsequent to the 1940 judgment. But respondent contends that this evidence still supports the judgment awarding the husband a divorce. Mr. Gough testified that after the entry of the New York decree appellant continually harassed him for money although, admittedly, he was always in arrears on the support payments notwithstanding his income was $350 per week while appellant's was $25. Specifically, he testified that appellant kept calling him by telephone at the theatre where he worked in regard to her support payments; that she became hysterical at times and threatened to denounce him publicly. The only corroboration of this testimony was given by a Mr. Fluellen who was stage manager at the time. He testified that a woman announcing herself as Mrs. Gough telephoned

on several occasions, and that when Mr. Gough came to the telephone he became upset and his mental attitude after such conversation appeared to affect adversely his stage performance. Fluellen admitted that he did not know Mrs. Gough and that he could not hear any of her conversation. Can this evidence support a finding that appellant has been guilty of conduct constituting extreme mental cruelty and inflicting grievous mental suffering upon respondent? As a matter of law it cannot. It does no more than demonstrate that Mrs. Gough sought only to enforce her adjudicated rights. To make a request by telephone to a judgment debtor that he pay the judgment is the right of any creditor. He could easily have avoided her calls by paying his debt. Any "harassment" resulting to respondent was brought about by his own conduct and was provoked by his own failure to comply with the terms of that judgment when apparently he had the ability to do so.

Finally, inasmuch as the New York judgment is res judicata as to the matter of respondent's desertion and wilful neglect, this coupled with appellant's own testimony that respondent simply moved out of their residence without her prior knowledge or consent and the finding that he was almost $12,000 in arrears under the New York decree all amply support the allegations of her cross-complaint for divorce. The decree in the prior action was alone sufficient evidence. (*Quagelli* v. *Quagelli*, 99 Cal.App. 172, 175 [277 P. 1089].)

The judgment is reversed with directions to strike all findings commencing with "that there is no community property" in finding III and all conclusions of law except number II; to strike all the judgment after the word adjudged; to make findings of fact in accordance with the allegations of Mrs. Gough; in her complaint particularly that of the total unpaid accrued installments due under the New York decree aggregating $17,473.25, the sum of $5,484 has been paid, leaving due $11,989.25; that by reason of defendant's removal from New York to California it is necessary for the protection of plaintiff's rights that her New York decree be established in this court; that plaintiff is without funds to defray the expenses of this action; that defendant is financially able to pay a reasonable fee for plaintiff's attorney in representing her in both actions involved herein; that $1,000 is a reasonable fee. That conclusions of law declare that the New York decree should be established as a foreign judgment; that plaintiff have judgment for the sum of $11,989.25 accrued and un-

paid at the time of trial plus $40 per week to the date of entry of the new judgment and that Mr. Gough should be ordered to pay thereafter to Mrs. Gough $40 per week as support money. That such findings further recite that the allegations of Mrs. Gough's cross-complaint for divorce are true and conclude that a decree of divorce should be entered in her favor. Let judgment be entered as authorized by such findings and conclusions.

Wilson, J., concurred.

McComb, J., dissented.

Respondent's petition for a hearing by the Supreme Court was denied February 15, 1951. Carter, J., and Schauer, J., voted for a hearing.