GRACE ISSERMAN, PLAINTIFF-APPELLANT, v. ABRAHAM
J. ISSERMAN, DEFENDANT-RESPONDENT.

Argued October 27, 1952—Decided December 15, 1952.

*Mr. Samuel A. Larner* argued the cause for the appellant (*Messrs. Budd and Larner,* attorneys).

*Mr. Sidney S. Jaffe* argued the cause for the respondent (*Messrs. Milton M. and Adrian M. Unger,* attorneys).

*Mr. Charles J. Milton* argued the cause for the estate of Richard J. Fitz Maurice, deceased (*Messrs. Milton, McNulty & Augelli,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the plaintiff-appellant from a judgment of the Chancery Division of the Superior Court which vacated a decree of separate maintenance entered in 1927 in favor of the plaintiff-appellant and against the respondent. The respondent cross-appeals the award of a counsel fee to the plaintiff-appellant in this proceeding.

These appeals, while pending in the Appellate Division, were certified here on our own motion.

On May 18, 1927 a final decree was entered in an action for separate maintenance in favor of the appellant which required the respondent to provide a weekly support of $50 to her and their infant son. Subsequently, in 1941, this order was modified so as to provide for the payment of $45 per week, with $41.50 allocated to the support of the wife and $3.50 to the infant son. At that time the child was 15 years of age. In 1943 respondent instituted a divorce proceeding in the State of Nevada against the appellant and a final decree was entered in his favor in that cause.

On April 18, 1944 respondent filed the petition in this present cause in the former Court of Chancery seeking to dismiss the bill of complaint for maintenance which had been filed as aforesaid in 1927, and to vacate all orders of support made thereunder.

The basis of the petition was the entry of a decree of divorce *a vinculo* in the State of Nevada on December 4, 1943, which purported to dissolve the marriage between the parties and approved an alleged agreement between the parties wherein it was asserted that all the rights of property of the parties and the right of the appellant to alimony, separate support and maintenance, past, present and future were settled by the agreement. The terms of the agreement were apparently incorporated in the order and called for the immediate payment to the appellant of $3,000 in cash, together with a note for $2,000 payable three years from date with interest, and payment to the appellant of $45 a week for the support of the appellant and minor child until such time as the child enlists in the army or arrives at the age of 18. Thereafter the respondent was to pay the appellant the sum of $35 a week for a period of five years from the date of the order or until death or re-marriage of the appellant. The decree further said that the decree of the Court of Chancery heretofore in existence was abrogated and declared null and void.

The appellant resisted this application by an answer to the petition in which she contended the Nevada decree was obtained by fraud upon her, upon the Nevada court and upon the Court of Chancery here in New Jersey, and she filed a cross-petition seeking a determination that the Nevada court was without jurisdiction and that its decree was invalid and had no force and effect upon the decree of the Court of Chancery in the maintenance action. Subsequently, the appellant made an application to hold the respondent in contempt for failure to comply and make payments under the decree for maintenance in this State. This application was held for final hearing.

When the petition of respondent came on for hearing the advisory master determined the effect of the Nevada decree solely on the basis of affidavits and cross-affidavits and held in favor of the respondent on the ground that the Nevada decree was unassailable under the full force and credit clause and binding upon the courts of New Jersey. *Isserman v. Isserman,* 23 *N. J. Misc.* 174 (*Ch.* 1945). On appeal from this determination the Court of Errors and Appeals reversed and remitted the cause for the taking of oral proofs in open court "on the issue as to whether the defendant was in fact and in law domiciled in Nevada at the time the divorce in that state was procured." *Isserman v. Isserman,* 138 *N. J. Eq.* 140 (*E. & A.* 1946).

Upon the rehearing so ordered the advisory master refused to allow the plaintiff-appellant to take the depositions of out-of-state witnesses bearing upon the jurisdiction of the Nevada court, the *bona fides* of the residence of the respondent in Nevada, and the fraud alleged to have been practiced upon her and the courts of both states. He determined that under the decision of the United States Supreme Court in *Sherrer v. Sherrer,* 334 *U. S.* 343, 68 *S. Ct.* 1087, 92 *L. Ed.* 1429 (1948), the appearance by the wife in the Nevada court constituted a submission to its jurisdiction and hence the testimony was immaterial and of no consequence. This determination was again appealed and it came before this

court, 2 *N. J.* 1 (1949), and we held it was improper for the advisory master to have ignored the mandate of the Court of Errors and Appeals merely because in his opinion a decision of the United States Supreme Court had affected a change in the applicable law. We felt that the factual issue raised by the pleadings should be established by testimony in the record. Further, we made it clear that we did not consider that the *Sherrer* opinion necessarily foreclosed our courts in a case such as the instant one from inquiring into the facts of residence and jurisdiction independently, with the possibility that our courts might come to a conclusion opposite from that of the Nevada court because of the fraudulent conduct of the parties.

We took judicial notice of the fact that the respondent was a counselor-at-law of this State and that the question as to whether or not there was a fraud upon our Court of Chancery was of moment to us independently of the related charge of fraud upon the Nevada court and fraud upon his wife. We pointed out further that the infant son of the marriage was a direct participant in the Chancery decree of September 23, 1941, and that the child had constantly been in New Jersey, and that the Nevada court possibly was without jurisdiction as to his rights. We further questioned the power and right of the Nevada court to undertake to incorporate in its decree a paragraph declaring null and void a decree of the Court of Chancery of this State. And we did this for the reasons stated that potentially a different framework of facts and issues might exist in this case than existed in the *Sherrer* case, *supra,* or even in the companion case of *Coe v. Coe,* 334 *U. S.* 378, 68 *S. Ct.* 1094, 92 *L. Ed.* 1451 (1948).

As the result of our reversal the cause was again remanded, testimony was taken in open court and depositions of out-of-state witnesses submitted by both parties in support of their contentions. Thus, after more than seven years of litigation at the trial and appellate levels the cause was finally

heard on the merits of the issues raised by the respondent's petition and the appellant's answer.

After a careful review of all the evidence presented, the advisory master held the appellant had failed to prove extrinsic fraud and was estopped by her participation and appearance in the Nevada case, and that therefore under the doctrine of the *Sherrer* and *Coe* cases, *supra*, the Nevada decree was entitled to full faith and credit in our courts. Final judgment was entered in the court below on November 15, 1951 in favor of respondent, upholding the Nevada decree, vacating the final decree and subsequent orders entered in the maintenance action, and denying the appellant's application to hold respondent in contempt. The judgment also awarded a counsel fee of $3,500 to the estate of Richard J. Fitz Maurice, deceased, counsel for the appellant. It is from this judgment that the present appeals are taken.

The issues here presented are: (1) is the Nevada decree based upon a true adversary proceeding so as to foreclose inquiry into jurisdictional facts by the courts of this State; (2) was the defendant a *bona fide* resident of Nevada so as to give jurisdiction to the Nevada court to enter a decree entitled to full faith and credit; and (3) was the defendant guilty of unclean hands so as to estop him from procuring affirmative relief?

The record leads us inescapably to the same conclusion reached by the advisory master below that the Nevada proceedings were true adversary proceedings. The appellant failed to establish fraud in the jurisdiction which would deprive the Nevada decree of its constitutional protection. The appellant entered an appearance in the Nevada proceeding, pleaded to the complaint and filed a cross-complaint of her own, not through any collusion with her husband to impose upon the Nevada Court, but on the advice of her own counsel in Newark, through counsel chosen by him. She actively participated in the trial of the suit in Nevada and during its trial entered into negotiations by which she sought to seek the best financial settlement possible.

While the facts are in dispute as to whether or not the appellant was in accord with the final disposition and steps taken by her Nevada counsel, any resolution of such problem is for the courts of Nevada and not for the courts of this State.

The wife by her pleadings and her appearance in Nevada contested the jurisdictional question of the residence of the respondent. She was afforded her day in court with respect to every issue involved in that litigation, including the jurisdictional issue of the respondent-petitioner's domicile. She had the opportunity to elect between participating in the Nevada proceeding or to permit it to proceed as an *ex parte* proceeding, but having entered her appearance and filed her pleadings and actively contested the basic issues, she cannot challenge the validity of the decree in this State which is entitled to full faith and credit under the constitutional mandate. *Davis v. Davis*, 305 *U. S.* 32, 59 *S. Ct.* 3, 83 *L. Ed.* 26 (1938); *Sherrer v. Sherrer, supra; Coe v. Coe, supra.*

The appellant makes a strenuous argument that she comes within the decision of this court in *Staedler v. Staedler*, 6 *N. J.* 380 (1951). That case is clearly distinguishable, for there every step taken by the wife in the Florida proceeding was under the direct control of her husband and counsel retained by him, and in that case we carefully noted that the rule of the *Sherrer* and *Coe* cases would not apply to a situation here presented when we said:

"We are firmly of the opinion that the principles of the *Sherrer, supra,* and *Coe* cases, *supra, only apply to a true adversary proceeding* where the parties are represented by counsel of their independent choice and where there is an opportunity to make a voluntary decision on the question as to whether or not the case should be fully litigated either on the question of jurisdiction or the merits, and that once an election has been made by the defendant under such circumstances and conditions that then and then alone can the judgment of the court be *res adjudicata* and the full faith and credit clause operate for the advancement of justice rather than for the perpetration of a fraud." (Italics ours.)

■ The appellant is clearly in such a position, and the Nevada judgment, insofar as it grants a divorce *a vinculo* to the respondent, is entitled to full faith and credit in this State. As to the effect of the Nevada decree on the existing decree of the Court of Chancery for maintenance, we reaffirm what we said in the previous appeal in the case, 2 *N. J.* 1, *page 7*, that "it is difficult to understand by what right the Nevada court undertook to incorporate within its decree a paragraph declaring null and void a decree of the Court of Chancery of New Jersey."

The force and effect to be given in this State to the provisions of a foreign decree for alimony and support depends on whether or not that part of the decree is entitled to full faith and credit in this State. Such a question is usually raised as a defense in an action where alimony or support, or both, are asked for in this State, *Robison v. Robison,* 9 *N. J.* 288 (1952), and it is for the courts of our State and not those of Nevada to say what effect the Nevada judgment has on existing litigation or orders of the courts of this State.

■ Our statute on maintenance is applicable only where the relationship of husband and wife exists, and a decree of absolute divorce dissolves such relationship and thereby terminates the wife's right to thereafter sue or enforce an order for separate maintenance and support. *Peff v. Peff,* 2 *N. J.* 512, 525 (1949). This is subject to the exception that where there is a failure to apply in the divorce proceeding for alimony in substitution for the support order granted in the maintenance proceeding, this is merely a procedural defect and the decree of divorce alone does not merge or vacate a prior order for separate maintenance. *Bowers v. Bowers,* 132 *N. J. Eq.* 431 (*E. & A.* 1942); *Schimek v. Schimek,* 109 *N. J. Eq.* 395 (*Ch.* 1931).

■ Nor is a decree for maintenance superseded by a judgment of the foreign state where jurisdiction has only been obtained by publication entered in an *ex parte* proceeding in which *in personam* jurisdiction over the wife to whom the

maintenance decree runs was not obtained.  *Estin v. Estin,* 334 *U. S.* 541, 68 *S. Ct.* 1213, 92 *L. Ed.* 1561 (1948).

There is a distinction between support and maintenance or alimony *pendente lite,* and alimony allowed in a final judgment for divorce *a vinculo.*  The former is the duty of support owed by the husband to the wife during such time as they were legally separated during the existence of the marital relationship.  Alimony in its technical sense in this State is purely statutory and is an expression of the continuing duty of support which a husband owes his wife, and of which he is not permitted to absolve himself by his own misconduct, although that misconduct brings about the dissolution of the marriage.  *Lynde v. Lynde,* 64 *N. J. Eq.* 736, at 751 (*E. & A.* 1902).

Thus the appellant in this case had the right to choose between relying on her maintenance decree in this State and her cause of action for divorce for desertion with its incidental right of alimony, or contesting her husband's action for divorce in all particulars before the Nevada court.  Having done so and the decision having gone against her on the merits both as to the right of her husband to a divorce and her right to alimony, she placed herself in a position where her existing decree of maintenance ceases to have any *res adjudicata* effect with respect to her husband's duty for support.  Her position is no better under the full faith and credit clause, under all the circumstances, than her position would have been in this State if her husband had prevailed in a counter-action against her for divorce.

But the Nevada decree is not *res adjudicata* as to the infant who had certain rights in the maintenance decree and who was not made a party to the proceeding in Nevada in 1943 when he was 17 years of age, so that that phase of the maintenance decree is still effective as to any rights the son may have, if any, at the present moment, which is •not entirely clear from the record.

As to the cross-appeal of the respondent with respect to the amount of counsel fee, since this was a marital pro-

ceeding a counsel fee may be awarded under *Rule* 3:54–7(*a*). The decree for maintenance is not in any sense a divorce decree but is purely a money decree authorized by the statute, *Adams v. Adams*, 77 *N. J. Eq.* 123 (*Ch.* 1910), and the wife was entitled to attempt to preserve it if she could against the sweeping effect of the Nevada decree. *Esenwein v. Pennsylvania*, 325 *U. S.* 279, 65 *S. Ct.* 1118, 89 *L. Ed.* 1608 (1945); *Estin v. Estin, supra.* See 64 *Harvard L. Rev.* 1287. The mere fact she failed to establish a case within the protection of these decisions, or within the rule of *Staedler v. Staedler, supra,* does not preclude an award of a counsel fee in this case. We consider the award made by the advisory master to the estate of Richard J. Fitz Maurice, deceased, reasonable under all the facts and circumstances.

The judgment as modified with respect to the rights of the infant son is affirmed without costs.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.