[L. A. No. 22889. In Bank. Apr. 28, 1955.]

RUTH M. WORTHLEY, Appellant, v. EDWARD J. WORTHLEY, Respondent.

Kenny & Morris and Robert W. Kenny for Appellant.

Slane, Mantalica & Davis and Frank Barclay for Respondent.

TRAYNOR, J.—Plaintiff appeals from a judgment barring further prosecution of this action. The judgment was entered after a trial of defendant's special defense (Code Civ. Proc., § 597) to plaintiff's complaint for prospective and retroactive enforcement of defendant's obligations under a separate maintenance decree entered in the New Jersey Court of Chancery on May 19, 1947. Plaintiff and defendant were married in New Jersey in March 1943, and separated in November 1946. In the action for separate maintenance defendant appeared personally and by counsel, and the decree ordered him to pay $9.00 a week for plaintiff's support. About ten months after the decree was entered, defendant left New Jersey for Nevada, and in March 1948 he commenced an action for divorce in that state. Although plaintiff was served in New Jersey with summons and a copy of the complaint in the Nevada action, she did not appear therein. On July 7, 1948, the Nevada Second Judicial District Court granted defendant a divorce.

Defendant had paid all of the sums due under the New Jersey decree at the time the divorce was granted by the Nevada court but made no further payments thereafter. The Nevada decree contained no provision for alimony. On November 16, 1951, plaintiff commenced this action in the Superior Court of Los Angeles County, the county of defendant's present residence. She alleged that the New Jersey decree "has become final and has never been vacated, modified, or set aside" and that defendant is delinquent in his payments thereunder in the amount of $1,089. She seeks a judgment for the accrued arrearages and asks that the New Jersey decree be established as a California decree and that defendant be ordered to pay her $9.00 a week until further order of the court. Defendant answered the complaint by a general denial and by alleging, as an affirmative defense, that the Nevada divorce decree had terminated his obligations under the earlier New Jersey separate maintenance decree. On defendant's motion, the affirmative defense was tried first under the procedure established by section 597 of the Code of Civil Procedure. The trial court concluded that the Nevada decree dissolved the marriage and was therefore a bar to the maintenance of an action to enforce defendant's obligations under the New Jersey decree.

Since plaintiff does not question the validity of the divorce granted by the Nevada court, that decree, being regular on its face, must be accorded full faith and credit

468

in this state. (*Williams* v. *North Carolina*, 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Ibid.*, 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366].) The controlling questions on this appeal are, therefore, (1) whether the dissolution of the marriage terminated defendant's obligations under the New Jersey decree and, if not, (2) whether and to what extent those obligations are enforceable in this state.

Since the full faith and credit clause compels recognition of the Nevada decree only as an adjudication of the marital status of plaintiff and defendant and not of any property rights that may be incident to that status (*Estin* v. *Estin*, 334 U.S. 541, 548-549 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412]), the effect of the dissolution of the marriage on defendant's preexisting obligations under the New Jersey maintenance decree must be determined by the law of New Jersey. (*Ibid.*; *Sutton* v. *Leib*, 342 U.S. 402, 406, 409 [72 S.Ct. 398, 96 L.Ed. 448]; *Biewend* v. *Biewend*, 17 Cal.2d 108, 111, 114 [109 P.2d 701, 132 A.L.R. 1264].) The Supreme Court of that state has recently held that a New Jersey "decree for maintenance [is not] superseded by a judgment of the foreign state where jurisdiction has only been obtained by publication entered in an *ex parte* proceeding in which *in personam* jurisdiction over the wife to whom the maintenance decree runs was not obtained." (*Isserman* v. *Isserman*, 11 N.J. 106 [93 A.2d 571, 575].) We must therefore conclude that defendant's obligations under the New Jersey decree were not terminated by the dissolution of the marriage effected by the Nevada court in a proceeding in which personal jurisdiction over plaintiff was not obtained.

The second question is more difficult. Since the New Jersey decree is both prospectively and retroactively modifiable (N.J.S. § 2A:34-23 [1951]), we are not constitutionally bound to enforce defendant's obligations under it. (*Sistare* v. *Sistare*, 218 U.S. 1 [30 S.Ct. 682, 54 L.Ed. 905, 28 L.R. A.N.S. 1068]; *Lynde* v. *Lynde*, 181 U.S. 183 [21 S.Ct. 555, 45 L.Ed. 810]; *Barber* v. *Barber*, 21 How. (U.S.) 582 [16 L.Ed. 226].) Nor are we bound *not* to enforce them.

In recent cases the United States Supreme Court has expressly reserved judgment on the question of full faith and credit to modifiable judgments and decrees (see *Barber* v. *Barber*, 323 U.S. 77, 81 [65 S.Ct. 137, 89 L.Ed. 82, 157 A.L.R. 163]; *Griffin* v. *Griffin*, 327 U.S. 220, 234 [66 S.Ct. 556, 90 L.Ed. 635]; but see *Halvey* v. *Halvey*, 330 U.S. 610, 615 [67 S.Ct. 903, 91 L.Ed. 1133]), and the late Mr. Justice Jackson, a foremost expounder of the law of full faith and credit in recent years,

(*Halvey* v. *Halvey,* 330 U.S. 610, 615 [67 S.Ct. 903, 91 L.Ed. 1133]; *Cummings* v. *Cummings,* 97 Cal.App. 144, 151 [275 P. 245].) The United States Supreme Court has held, however, that if such obligations are enforced in this state, at least as to accrued arrearages, due process requires that the defendant be afforded an opportunity to litigate the question of modification. (*Griffin* v. *Griffin,* 327 U.S. 220, 233-234 [66 S.Ct. 556, 90 L.Ed. 635]; see also *Gough* v. *Gough,* 101 Cal.App.2d 262, 267-268 [225 P.2d 668].) It has also clearly indicated that as to either prospective or retroactive enforcement of such obligations, this state "has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." (*Halvey* v. *Halvey, supra,* 330 U.S. 610, 615.)

In *Biewend* v. *Biewend,* 17 Cal.2d 108, 113-114 [109 P.2d 701, 132 A.L.R. 1264], it was held that the California courts will recognize and give prospective enforcement to a foreign alimony decree, even though it is subject to modification under the law of the state where it was originally rendered, by establishing it "as the decree of the California court with the same force and effect as if it had been entered in this state, including punishment for contempt if the defendant fails to comply. [Citations.]" Similar holdings in reference to both alimony and support decrees have repeatedly been made by the District Courts of Appeal (see the cases cited in *Biewend* v. *Biewend, supra,* 17 Cal.2d at 113; see also *Starr* v. *Starr,* 121 Cal.App.2d 633 [263 P.2d 675] [modifying prospectively a Nevada decree for child support]; *Toohey* v. *Toohey,* 97 Cal.App.2d 84, 87 [217 P.2d 108]; *Tomkins* v. *Tomkins,* 89 Cal.App.2d 243, 250 [200 P.2d 821]) and by the courts of other states (*Sackler* v. *Sackler* (Fla.), 47 So.2d 292, 294-295 [18 A.L.R.2d 856]; *Rule* v. *Rule,* 313 Ill.App. 108 [39 N.E.2d 379]; *Matson* v. *Matson,* 186 Iowa 607, 625 [173 N.W. 127]; *Fanchier* v. *Gammill,* 148 Miss. 723, 737 [114 So. 813]; *Little* v. *Little,* 146 Misc. 231, 233 [262 N.Y.S. 654], affirmed without opinion, 236 App. Div. 826 [259 N.Y.S. 973], rearg. den., 237 App.Div. 817

forcefully declared that modifiable alimony and support decrees are within the scope of that clause: "Neither the full faith and credit clause of the constitution nor the Act of Congress implementing it says anything about final judgments or, for that matter, about any judgments. Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality. Upon recognition of the broad meaning of that term much may someday depend." (Concurring opinion, *Barber* v. *Barber,* 323 U.S. 77, 87 [65 S.Ct. 137, 89 L.Ed. 82, 157 A.L.R. 163].)

[260 N.Y.S. 981]; *Lockman* v. *Lockman,* 220 N.C 95, 98 [16 S.E.2d 670]; *Cousineau* v. *Cousineau,* 155 Ore. 184, 201-202 [63 P.2d 897]; *Johnson* v. *Johnson,* 194 S.C. 115 [8 S.E.2d 351, 354]; *Sorensen* v. *Spence,* 65 S.D. 134 [272 N.W. 179, 180-181]; *McKeel* v. *McKeel,* 185 Va. 108, 113 [37 S.E. 2d 746]; see also *Kruvand* v. *Kruvand* (Fla.), 59 So.2d 857; *Ostrander* v. *Ostrander,* 190 Minn. 547, 549-550 [252 N.W. 449]; *Shibley* v. *Shibley,* 181 Wash. 166 [42 P.2d 446].) It was stated in the Biewend case, however, that the Missouri decree would be established as a decree of the California courts "until such time as the Missouri court modifies its decree." (17 Cal.2d 108, 114.) On reconsideration we have concluded, for reasons that appear below, that this statement was erroneous insofar as it implied that the California courts will not try the issue of modification on its merits, and that the courts of this state should undertake to try such issues.*

The District Court of Appeal for the Third Appellate District in a recent case has prospectively modified a support obligation created in a Nevada decree. (*Starr* v. *Starr, supra,* 121 Cal.App.2d 633.) In that case the plaintiff-wife obtained a divorce in Nevada in 1949, at which time she was awarded custody of her minor child and the defendant-husband was ordered to contribute $25 per month toward the support of the child. Subsequently the wife and child became residents of California, and in 1951 she brought an action asking that the husband's support payments be increased to $75 per month. In affirming the trial court's order increasing the husband's obligation to $75 per month, the District Court of Appeal drew an analogy to *Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739], in which it was held that custody rights established in one state were modifiable in any other state that had jurisdiction over the subject matter. The court concluded that if the California courts could modify the custody rights created in the Nevada decree, there was no reason why the support obligation created in the same decree could not also be modified. Similarly, the courts of a number of other states have affirmed their willingness to undertake prospective modification of alimony and support obligations created in sister-state decrees. (See *Blauvelt* v. *Blauvelt,* 199 Ark. 710 [136 S.W.2d 201, 204]; *Sackler* v.

---

*Similarly, *Handschy* v. *Handschy,* 32 Cal.App.2d 504 [90 P.2d 123], and *Barns* v. *Barns,* 9 Cal.App.2d 427 [50 P.2d 463], are disapproved insofar as they are inconsistent with this opinion on the question of the litigability of the issue of modification.

*Sackler*, (Fla.), *supra*, 47 So.2d 292, 294-295 [18 A.L.R.2d 856]; *Lopez* v. *Avery* (Fla.), 66 So.2d 689, 693; *Durfee* v. *Durfee*, 293 Mass. 472, 477-479 [200 N.E. 395]; *Turnage* v. *Tyler*, 183 Miss. 318 [184 So. 52]; *Robison* v. *Robison*, 9 N.J. 288 [88 A.2d 202, 204], cert. den. 344 U.S. 829 [73 S.Ct. 33, 97 L.Ed. 645]; *Johnson* v. *Johnson*, 196 S.C. 474 [13 S.E.2d 593, 595-596, 134 A.L.R. 318]; *Setzer* v. *Setzer*, 251 Wis. 234, 236-237 [29 N.W.2d 62], citing *Halvey* v. *Halvey, supra*, 330 U.S. 610, 615; see also *Barclay* v. *Marston*, 123 N.Y.S.2d 196, aff'd. without opinion, 127 N.Y.S.2d 842.)

Although the question of retroactive modification has been seldom litigated, the United States Supreme Court has expressed its approval of the proposition that actions to enforce retroactively modifiable decrees should be tried in a forum that has personal jurisdiction over both parties, and that in the trial of such actions the defendant must be afforded an opportunity to set up any mitigating defenses that would be available to him if the suit were brought in the state where the alimony or support decree was originally rendered. (*Griffin* v. *Griffin*, 327 U.S. 220, 233-234 [66 S.Ct. 556, 90 L.Ed. 635]; see also *Gough* v. *Gough*, 101 Cal.App.2d 262, 267-268 [225 P.2d 668].) The same rule has been expressed by the Supreme Court of New Jersey (*O'Loughlin* v. *O'Loughlin*, 6 N.J. 170 [78 A.2d 64, 68-69]; see also *Johnson* v. *Johnson*, 196 S.C. 474 [13 S.E.2d 593, 595-596, 134 A.L.R. 318]; *Robison* v. *Robison, supra*, 9 N.J. 288 [88 A.2d 202, 204], cert. den. 344 U.S. 829 [73 S.Ct. 33, 97 L.Ed. 645]), and its adoption has been commended by scholars who have recently studied the problem. (See Scoles, "*Enforcement of Foreign 'Non-Final' Alimony and Support Orders*," 53 Columb.L. Rev. 817, 823-825; Ehrenzweig, "*Interstate Recognition of Support Duties*," 42 Cal.L.Rev. 382, 393-394.)

It is contended, however, that a contrary rule has been established in California by *MacDonald* v. *Butler*, 68 Cal. App.2d 120 [156 P.2d 273]. That case was an action to recover installments accrued under a retroactively modifiable Michigan decree for the support of minor children. The District Court of Appeal affirmed the judgment of dismissal entered on defendant's demurrer to the complaint, and it is contended that because the case was decided on demurrer it necessarily holds that no cause of action was stated under full faith and credit, comity, or otherwise. This contention reflects a failure to distinguish between the decision as res judicata and as *stare decisis*. It is well established

that "cases are not authority for propositions not considered therein" (*Metcalf* v. *County of Los Angeles*, 24 Cal.2d 267, 273 [148 P.2d 645]; see also *Maguire* v. *Hibernia Sav. & L. Soc.*, 23 Cal.2d 719, 730 [146 P.2d 673, 151 A.L.R. 1062]; *Mortgage Guaranty Co.* v. *Chotiner*, 8 Cal.2d 110, 114 [64 P.2d 138, 108 A.L.R. 1080]; *Cate* v. *Fresno Traction Co.*, 213 Cal. 190, 202-203 [2 P.2d 364]; *Webster* v. *Fall*, 266 U.S. 507, 511 [45 S.Ct. 148, 69 L.Ed. 411]; *Schram* v. *Robertson*, (9 Cir.) 111 F.2d 722, 725) and, since the report of the MacDonald case clearly indicates that it was argued and decided solely on the question of full faith and credit, its authority as precedent is limited to the decision on that question. ▆ Moreover, propositions of law laid down in opinions of the District Courts of Appeal are not binding on this court. (*Western L. Co.* v. *State Board of Equalization*, 11 Cal.2d 156, 167-168 [78 P.2d 731, 117 A.L.R. 838]; *Shelton* v. *City of Los Angeles*, 206 Cal. 544, 550 [275 P. 421]; *People* v. *Rabe*, 202 Cal. 409, 418-419 [261 P. 303]; *In re Stevens*, 197 Cal. 408, 423-424 [241 P. 88]; *Bohn* v. *Bohn*, 164 Cal. 532, 537-538 [129 P. 981]; *People* v. *Davis*, 147 Cal. 346, 350 [81 P. 718].)

It is suggested that even if there are no binding California authorities on the question, we should follow certain sister-state decisions holding that alimony and support obligations created by a prospectively and retroactively modifiable decree are enforceable only in the state in which the decree was rendered. The policy implicit in those decisions is that a modifiable duty of support in one state "is of no special interest to other states and . . . is not enforceable elsewhere under principles of Conflict of Laws." (Rest., Conflict of Laws, § 458, comment *a*.) This policy was rejected by this court in the Biewend case (see also *Hiner* v. *Hiner*, 153 Cal. 254, 257 [94 P. 1044]) and by the Legislature of this state in enacting the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., §§ 1650-1690.) ▆ In proceedings, commenced pursuant to the provisions of that act, the California courts must recognize and enforce foreign alimony and support decrees whether modifiable or not (Code Civ. Proc., § 1670), and must afford the defendant an opportunity to litigate the issue of modification. (Code Civ. Proc., § 1682; *Griffin* v. *Griffin*, *supra*, 327 U.S. 220, 233-234.) If we should now refuse to follow the policy expressed by the Legislature in the Uniform Act, and by this court and the United States Supreme Court in the Sampsell and Griffin cases, and should hold that even

though the courts of this state have personal jurisdiction over the defendant, his obligations under a prospectively and retro-actively modifiable sister-state support decree cannot be en-forced in this state, the result would be anomalous. There would then be two rules in California, one for proceedings com-menced under the Uniform Act, and a contrary one for all other proceedings to enforce foreign-created alimony and support obligations.

Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. If the accrued in-stallments are modified retroactively, the judgment for a liquidated sum entered after such modification will be final and thus will be entitled to full faith and credit in all other states. (*Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430, 438-439, and cases cited.) If the installments are modified prospectively, the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged. (*Snyder* v. *Snyder*, 219 Cal. 80, 81 [25 P.2d 403] ; *Ralphs* v. *Ralphs*, 86 Cal.App.2d 324, 325 [194 P.2d 592] ; *Molema* v. *Molema*, 103 Cal.App. 79, 81 [283 P. 956].) Furthermore, the interests of neither party would be served by requiring the plaintiff to return to the state of rendition and reduce her claim for accrued installments to a money judgment. In the present case, for example, defendant, a domiciliary of this state, would have to travel 3,000 miles from his home, family, and job to secure a modification of plaintiff's allegedly stale claim and to protect his interests in any proceeding for the enforcement of his support obligation that she might institute in New Jersey. If defendant is unable to afford the time or money to travel to New Jersey to make an effective appearance in plaintiff's proceedings in that state, his substantive defenses to plaintiff's claims will be foreclosed. By the same token, unless plaintiff elected to proceed under the Uniform Recip-rocal Enforcement of Support Act,* which has been adopted in New Jersey (N.J.S. § 2A :4-30.1-30.22), defendant's failure to pay the installments as they came due would force her con-stantly to relitigate his obligation to support. Repeated suits for arrearages would have to be brought in New Jersey as in-

---

*Code Civ. Proc., § 1654: ''The remedies provided in this title [the Uniform Reciprocal Enforcement of Support Act] are in addition to and not in substitution for any other remedies.''

stallments accrued, to be followed by repeated actions in California to enforce the New Jersey judgments for accrued installments, with the net result that the costs of litigation and the dilatoriness of the recovery would substantially reduce the value of the support to which plaintiff is entitled.

Furthermore, there is no merit to the contention that as a matter of practical convenience the issue of modification should be tried in the courts of the state where the support decree was originally rendered. Proof of changed circumstances in support cases is no more difficult than in custody cases and, as noted above, a California court that has jurisdiction of the subject matter must undertake to adjudicate a plea for modification of custody rights established by a sister-state decree. (*Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739].) Moreover, in most states the problem of modification is dealt with according to general equitable principles, and the law of the state in which the support obligation originated can be judicially noticed (Code Civ. Proc., § 1875) and applied by the California courts.

[11] Accordingly, we hold that foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered.

The judgment is reversed.

Gibson, C. J., Edmonds, J., and Carter, J., concurred.

SPENCE, J.—I dissent.

This case is before us on rehearing. On the first hearing, no claim was made that the prior New Jersey decree for plaintiff's support was modifiable retroactively as well as prospectively. We therefore assumed in our first opinion that such support decree was a final judgment, and that it "was entitled to full faith and credit in California." (*Worthley* v. *Worthley,* (Cal.) 267 P.2d 23.) Upon rehearing, it has been shown that the New Jersey support decree was not a final judgment for the reason that it was modifiable both retroactively and prospectively under the law of New Jersey. The majority opinion therefore concedes that "we are not constitutionally bound to enforce defendant's obligations under it," but it holds that the trial court should have enforced the New Jersey decree with such modifications as might have appeared proper. I cannot concur in these views.

Prior to the decision in the present case, this state has never sanctioned the modification by its courts of any decree of a sister state for the support of a wife. (*Biewend* v. *Biewend*, 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264] ; *Handschy* v. *Handschy*, 32 Cal.App.2d 504 [90 P.2d 123] ; *Barns* v. *Barns*, 9 Cal.App.2d 427 [50 P.2d 463].) I would adhere to the established law of this state and avoid the confusion which is bound to result from the disapproval of the above-cited cases. (See *Barns* v. *Barns*, *supra*, p. 430.)

Furthermore, the New Jersey judgment which plaintiff seeks to enforce in California is modifiable retroactively, as well as prospectively, under the law of New Jersey; but the majority opinion nevertheless requires its enforcement and modification by the courts of this state. This will result in confusion worse confounded, as the courts of each of several states, including New Jersey, might be called upon to modify the same decree, both retroactively as well as prospectively. In my opinion, the New Jersey decree, until made final by the courts of that state, is based upon shifting sands, which furnish no firm foundation upon which to predicate a judgment in any other jurisdiction.

The courts of New York dealt with a similar New Jersey decree in 1948. (*Champey* v. *Champey*, 80 N.Y.S.2d 206.) The wife there sought to enforce the New Jersey decree in the courts of New York. The judgment in favor of the wife was reversed by the Supreme Court, Appellate Division, and it said: "This action could not be maintained until the amount of the arrears accruing under the decree obtained in New Jersey, was definitely fixed by the courts of that state. This was not done here. (*Madden* v. *Madden*, 136 N.J. Eq. 132 [40 A.2d 611]." The wife then had the amount fixed by the New Jersey court and thereafter obtained enforcement of such final judgment in the courts of New York. (*Champey* v. *Champey*, 92 N.Y.S.2d 838.)

With respect to the admittedly valid Nevada decree of divorce which followed after the New Jersey decree for support of the wife, this court has held that such a divorce decree terminates all rights to further payments under a prior decree for wife support, even though the prior support decree was entered in this state. (*Cardinale* v. *Cardinale*, 8 Cal.2d 762 [68 P.2d 351].) The majority does not mention the Cardinale case. It seems illogical to me for this court to hold that the trial courts here must enforce, as a matter of comity, a prior New Jersey support decree which is modifiable both retro-

actively and prospectively, when it held in the Cardinale case that it would not enforce, under similar circumstances, a prior California support decree which was modifiable only prospectively.

Certain cases cited in the majority opinion are clearly distinguishable. They involved in effect the modification by our courts of foreign decrees with respect to the custody and support of children who had become domiciled in this state. Such matters as custody and support of children are not subject to binding contracts between the parents, no final judgment is ever entered anywhere with respect to such custody and support, and the state where the children may become domiciled has a paramount interest in the welfare of such children.

The majority opinion makes reference to the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., §§ 1650-1690.) A reading of that act shows that it has no bearing on the problem before us. It sets up certain procedures for criminal and civil enforcement, but when the civil procedures are followed and this state acts as a responding state, it makes its own initial determination of the amount of support to be imposed. (Code Civ. Proc., §§ 1682-1683.)

Further, the majority assumes that the present law places a hardship on plaintiff "by requiring the plaintiff to return" to New Jersey to obtain a final judgment before seeking to enforce it here. There is nothing in the record to show that plaintiff is not still residing in New Jersey or that the law of New Jersey would require her actual presence for the purpose of obtaining such final judgment. It appears to me far better to require that the New Jersey decree should be made final in that state before the courts of this state should be compelled to attempt its enforcement or modification.

Under the cited cases, plaintiff has stated no cause of action for enforcement or modification of the New Jersey decree. The trial court therefore properly denied plaintiff any relief, and regardless of the ground upon which the trial court may have based its ruling, I would affirm the judgment.

Shenk, J., and Schauer, J., concurred.