[Civ. No. 24523. Second Dist., Div. Two. Nov. 14, 1960.]

MARIA HERCZOG, Appellant, v. ADOLF HERCZOG, Respondent.

Gizella L. Allen and Warren M. Goodwin for Appellant.

Max L. Grossman for Respondent.

NOURSE, J. pro tem.*—This is an appeal from a judgment denying appellant any relief in an action brought by her to establish as a judgment in this state, a decree of separate maintenance entered in the Probate, Divorce and Admiralty Division of the High Court of Justice of England and affirmatively decreeing that a decree of divorce granted to respondent in the state of Nevada is a valid decree.

In her first cause of action, plaintiff alleges that she and the defendant were married on the 22d day of May, 1928, and that there is one child of said marriage born in 1930; that in February 1936, the Probate, Divorce and Admiralty Division of the High Court of Justice of England then having jurisdiction of the person of the plaintiff and of the defendant, entered a decree of judicial separation and that thereafter, on the 22d of December, 1936, did enter its order and decree; that the defendant therein, respondent herein, should pay until the further order of the court ''permanent alimony'' at the rate of eight pounds per week plus such amount as would equal the English income tax applicable to such alimony, said sum to include the maintenance of the minor child of the parties; that said judgments have never been vacated, modified or set aside; that since November 1945, the respondent herein has failed to pay said sum of eight pounds per week or any part thereof except the sum of $40 per month for the period beginning December 1945 and ending in June

---

*Assigned by Chairman of Judicial Council.

1948. She further alleges that the amount awarded by the English decree was inadequate to meet her needs and that the respondent herein was financially able to pay a substantially larger sum for her support. By her second cause of action she alleges the separation of herself and husband, the failure of the respondent to provide for her support and her need for support and disability to provide it. By the prayer of her complaint she asked either that the English decree be established as a judgment of this state and be enforced in this action; that it be adjudged and decreed that there is due and owing to her under the English decree, the sum of $12,410.62 and that the English decree be modified and defendant be required to pay a reasonable sum per week for her support and maintenance or that it be adjudged that she might live separate and apart from respondent and that respondent be ordered to pay her a reasonable sum per week for her support and maintenance and that he be further required to pay a reasonable sum for attorney's fees and costs in connection with the prosecution of the action.

By his answer respondent admitted the marriage of the parties, the entry of the English decree; denied that the English decrees had not been modified or that they were final. He denied that there was due to the plaintiff under the English decree the sum for which appellant sought judgment as aforesaid and denied that he had failed to make the payments ordered by the English decree. As an affirmative defense he pleaded a decree of divorce entered on the 10th day of October, 1945, in an action brought by him in the State of Nevada.

The trial court found that the English decrees were entered and that the English court had jurisdiction of the parties. It further found that "It is not true that said judgments so rendered have become final and have never been vacated, modified, or set aside." It further found that it was true that a decree of divorce was granted to respondent on October 10, 1945, and that due notice of the action for said divorce was given to appellant. The court further found that the respondent was not indebted to the plaintiff in any sum.

By its judgment the court decreed that the Nevada decree of divorce was a valid decree and "That the plaintiff shall take nothing by way of her complaint."

The evidence in the court below established without conflict that respondent left England in 1939 and did not return to that country; that he established residence in California prior to 1945; that he had paid the full amount of the permanent

alimony awarded by the English decree up to and including the month of October 1945 (the time of the entry of the Nevada decree) and had thereafter paid to plaintiff the sum of $40 per month (this being the amount fixed by the Nevada decree for the support of the minor child) until the date upon which said minor child attained the age of 18 years but after that time he paid nothing to appellant either under the English decree or the Nevada decree; that appellant resided in England until May 1954 (this action was commenced in August 1954); that appellant at the time of the trial and for some time prior thereto, had been employed part time but that her earnings did not exceed $23 per week; that the reasonable amounts required for her maintenance and support were in excess of her earnings; that the earnings of respondent as a theatrical performer were sporadic but that during the year 1958 (the calendar year preceding the trial which was held in January 1959) his income was in excess of $7,000. There was no evidence as to the amounts necessary for him to expend for living and traveling to meet his engagements as an actor but there was evidence that he was indebted to his theatrical agent in a sum in excess of $3,000.

Appellant asserts that the evidence was insufficient to support the finding that the Nevada decree was a valid one. While it is clear under the evidence that respondent was domiciled in this state within 12 months prior to the commencement of his action for a divorce in Nevada and that he resumed residence in this state within 18 months after his departure, thus establishing a prima facie case that he was domiciled in this state when the Nevada action was commenced (Civ. Code, § 150.2), there was substantial evidence that he was a bona fide resident of Nevada at the time he commenced his action and at the time of the entry of the decree and that at those times he intended to remain a resident of and domiciled in Nevada. It was, therefore, for the trial court to determine the fact of residence and domicile and its findings that respondent was a bona fide resident of Nevada being based upon substantial evidence, it is binding upon this court.

Appellant further attacks the Nevada decree upon the ground of fraud in that, so she asserts, respondent withheld from the Nevada court information as to appellant's place of residence and that as a result she did not receive any notice of the Nevada proceedings. Suffice it to say that the evidence shows that summons was published in Nevada, that a copy of the summons and complaint was mailed to a

bank in England through which appellant had been receiving payments under the English decree and that from the appellant's own evidence it could be inferred that, despite her denial, she did in fact receive notice of the Nevada proceedings.

Appellant attacks the findings of the trial court that the English decrees were not final and that they had not been vacated, modified or set aside. The finding that it was not true that the English decrees had "never been vacated, modified, or set aside," is totally unsupported by and contrary to the evidence. The question as to whether the English decrees were final is one of law and is governed by the law of England. By the terms of the English decree, the alimony awarded was payable until the further order of the court. It was, therefore, on its face, subject to modification at least prospectively. Under the law of England, arrearages under a decree awarding alimony, are not enforceable as a money judgment in an action at law but may only be enforced by application to the judges of the Divorce Division of the High Court of Justice. (Rayden on Divorce, 7th ed. (1958), p. 384; *Bailey* v. *Bailey*, 13 Q.B.D. 855; *Robins* v. *Robins* (1907), 2 K.B. 13.) The Divorce Division of the High Court of Justice is vested with discretion to *discharge* or vary orders for alimony and maintenance either prospectively or retroactively, and to revive any provisions for alimony that it may have suspended. (Administration of Justice (Miscellaneous Provisions) Act, 1938, § 14, (1)(d) ; *Pilcher* v. *Pilcher*, All England Law Reports (1956) (1), p. 463; Latey on Divorce, 14th ed. at p. 236.) A judgment for support survives the dissolution of the marriage in an action for divorce if the question of support is not litigated therein. (*Bragg* v. *Bragg* (1925), p. 20; *Pastre* v. *Pastre* (1930), p. 80.)

 The Nevada court did not have jurisdiction of the person of appellant and while it had jurisdiction to terminate the marriage of the parties it did not have jurisdiction to terminate appellant's right to support nor did it have jurisdiction in anywise to change or modify the decree of the English court. (*Estin* v. *Estin*, 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412] ; *Worthley* v. *Worthley*, 44 Cal.2d 465, 468 [283 P.2d 19].) The English decree being valid and subsisting, the appellant had the right to sue upon that decree in the courts of this state and to establish it as a decree of this state. This does not mean, however, that she was entitled to have established as a money judgment the

arrearages under the English decree. That decree, though established as a California judgment, could have no greater effect than it had in the jurisdiction of its origin, England. (Code Civ. Proc., § 1915; *Worthley* v. *Worthley, supra,* pp. 469, 474.) As we have pointed out, the court rendering the foreign judgment in question had not only the power to modify or even discharge the judgment, both prospectively and retroactively, but also to revive any portion of the order that it had modified or discharged. ■ The judgment of the English court being subject to modification both prospectively and retroactively by the court that rendered it, the courts of this state are not constitutionally bound to enforce respondent's obligations under it but if it is enforced the courts of this state are constitutionally bound to afford respondent opportunity to litigate the question of modification and to give him the same rights in that regard as he would have had in the English court. (*Worthley* v. *Worthley, supra,* pp. 468-469; *Halvey* v. *Halvey,* 330 U.S. 610, 615 [67 S.Ct. 903, 91 L.Ed. 1133]; and *Griffin* v. *Griffin,* 327 U.S. 220, 233-234 [66 S.Ct. 556, 90 L.Ed. 635].) ■ Under the statutes of this state the English judgment is enforceable (Code Civ. Proc., § 1915) but in an action to enforce it brought in this state the court has the same right to modify it prospectively or retroactively as the court which rendered the judgment would have had had the action been brought in that court. (Code Civ. Proc., § 1915; *Worthley* v. *Worthley, supra,* pp. 470, 474.)

■ The burden was upon the respondent in the trial court to establish that it would be inequitable to carry into the California judgment any arrearages that had accrued under the English decree and it was incumbent upon the trial court to find upon that issue. The evidence before the trial court clearly showed that appellant could not have enforced in the English courts the decree awarding her support as respondent was in the United States at the time he defaulted in the payments under the decree and at all times thereafter, and appellant was unable to obtain entry into the United States to enforce the judgment until the year in which the present action was started. No evidence was received at the trial as to the need of appellant for support or respondent's ability to support her except as to the year 1958. The findings of the trial court are very unartfully drawn and the only finding is of the present need and ability of respondent to support the appellant. There is no evidence and no finding

which would support a judgment denying appellant judgment for some part of the arrearage which accrued prior to the commencement of the action.

We have carefully studied the entire file in this matter and are unable to determine whether the trial court's denial of any relief to appellant was based upon the erroneous theory that the Nevada decree terminated her right to support or upon a finding that it would be inequitable to enforce the English decree.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.

*Assigned by Chairman of Judicial Council.