ETHEL M. WADDEY, Appellant, *v.* EVERETT WADDEY, JR., Respondent.

Submitted December 8, 1942; decided April 15, 1943.

*Henry H. Shepard* for appellant.

*William J. H. Molinari* and *Helen Borgia* for respondent.

RIPPEY, J. On May 24, 1928, the appellant was awarded a decree of absolute divorce from defendant by the Supreme Court of Kings County and provision was therein made for alimony of $35 per week up to and including February 21, 1929, and $25 per week thereafter.

By chapter 161 of the Laws of 1938, effective March 26, 1938, the Legislature amended section 1159 of the Civil Practice Act (now numbered 1172-c), which related to " Modification of judgment or order in action for divorce brought by wife," by adding the following provision: " The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with-respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife."

On April 14, 1938, respondent applied to the court to have the alimony provisions in the decree annulled. Appellant contended at that time, as now, that the statute was unconstitutional as interfering with her vested rights and could not be given a retroactive effect. Justice RIEGELMANN, at Special Term, over-ruled that contention and referred the matter to an official referee to take proof and report " whether the plaintiff was, on March 26th, 1938, and since that time, has been habitually living with a man known as Augustus S. Kibbe, holding herself out to be his wife, although not married to him." The referee reported in the affirmative. Special Term thereupon adopted the report of the referee and made an order annulling the alimony provisions of the decree and that order has been affirmed by the Appellate Division.

Courts have jurisdiction over the marriage relation, its incidents and its ultimate consequences only as such jurisdiction is conferred by statute (*Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 463; *Wilson* v. *Hinman,* 182 N. Y. 408, 410). The power of the Legislature to enact the statute under consideration (L. 1938, ch. 161) cannot be doubted (Cf. *Fearon* v. *Treanor,* 272 N. Y. 268). The decisive question here is whether the effect given to the statute by the courts below deprives the appellant of some substantial vested right. If the order from

which the appeal is taken so operates, it is not the result of due process and the statute so applied would violate both the State and Federal Constitutions. In determining the constitutional question, "the courts must give consideration to the proper construction and effect of the statute" (*Valz* v. *Sheepshead Bay Bungalow Corp.*, 249 N. Y. 122, 132).

It is a settled rule of statutory construction that the provisions of a statute will not be applied retrospectively where they are capable of any other construction unless the intent of the Legislature to the contrary clearly appears (*New York & Oswego Midland R. R. Co.* v. *Van Horn*, 57 N. Y. 473, 477; *Walker* v. *Walker*, 155 N. Y. 77, 81). There is nothing in the statutory provision that exhibits any intent other than that it should apply prospectively only. We cannot read into it something that is not there. Nor can we read into the act of 1938 any legislative intent to make it applicable to decrees entered prior to March 26, 1938, by construing it with section 1170 of the Civil Practice Act. The statutes were not enacted at the same time. The amendment to section 1159 was not an amendment to nor any part of section 1170. The Legislature, by its form as well as by the fact that it was, by its terms, an amendment to section 1159, indicated that its purpose was to deal with a situation not deemed to be covered by the provisions of section 1170. Even though the Legislature had indicated by express declaration its intent that the act should have retrospective application, it would not be effective as to decrees entered prior to the date it went into effect since the right of appellant to alimony became a vested property right upon the entry of the judgment and could not be affected by subsequent legislation (*Livingston* v. *Livingston*, 173 N. Y. 377).

Furthermore, the question of whether legislation with respect to varying, modifying or annulling provisions for alimony in final decrees of divorce may be applied retrospectively is not an open one in this court. The provisions contained in section 1170 of the Civil Practice Act to the effect that the court may, upon the application of either party to the action, at any time after final judgment and upon due notice to the other party, vary, modify or annul directions contained therein for the support of the wife have been in effect under one or another Code of Civil Procedure or Civil Practice Act reference since 1895

(L. 1895, ch. 891). Where claims were made that that statutory provision was retroactive in effect, this court held that it conferred no authority upon the court to vary, modify or annul provisions for alimony contained in any final decree entered prior to its effective date, although, by its express terms, it provided that it should apply to such decrees (*Livingston* v. *Livingston, supra; Lake* v. *Lake,* 194 N. Y. 179). By true analogy, the same rule must be applied to the amendment to section 1159 (now 1172-c) of the Civil Practice Act.

Nor can this court sustain the contention of respondent that without the 1938 amendment to section 1159 he is entitled, in the sound discretion of the court, to the relief which he seeks under the provisions of section 1170 of the Civil Practice Act because the effective date of the applicable provisions in that section was prior to the date of the entry of the final decree of divorce. It is true, of course, that the final decree in the instant case was entered subsequent to the enactment of the provisions of section 1170 and while it was in effect. The effect of that section was to write into every final judgment of divorce, entered after its enactment, a reservation, although none such was contained in the decree itself, of jurisdiction in the court to vary, modify or annul any provisions contained therein for alimony or to insert such provisions in the decree by amendment if previously it had contained no such award (*Fox* v. *Fox,* 263 N. Y. 68, 70; *Karlin* v. *Karlin,* 280 N. Y. 32). Nevertheless, that statutory provision did not authorize the court to annul for her misconduct by fornication, or immoral course of living, subsequent to the final decree, a provision for alimony contained in a final decree of divorce entered after its effective date in favor of the wife (*Hayes* v. *Hayes,* 220 N. Y. 596). Thus, the question of whether, under the provisions of section 1170 of the Civil Practice Act, a provision in the final decree for alimony awarded to the plaintiff in this case could be annulled because she has been habitually living with a man although not married to him, and yet holding herself out to be his wife, has been set at rest in her favor in this court.

In 1904 (L. 1904, ch. 339) the Legislature determined that public policy dictated that a woman who had received a final decree of divorce in her favor from her husband should no longer be permitted to hold her husband liable for alimony after

she had again married. However, not until 1938 (L. 1938, ch. 161) did the Legislature determine that public policy required a ban on further alimony payments provided in a final decree of divorce granted to the wife for the wife's failure otherwise to live, subsequent to the divorce, in her character of former wife. It is asserted here without contradiction that counsel for the defendant was instrumental in causing the introduction in and passage by the Legislature of the 1938 amendment, since previous efforts of the defendant in the courts to procure an annulment of the alimony provisions of his former wife's final decree of divorce under other provisions of the Civil Practice Act then in effect had been unsuccessful. No indication has been furnished to us that any public emergency then arose requiring that legislation and no circumstances are presented to indicate that the Legislature by the mere determination then made indicated that it intended that the cause specified, if found to exist, should be available to annul provisions in a final decree entered before it made its determination. The public policy of the State of New York as determined and recorded by the Legislature may not be changed and rewritten by a court to satisfy its own private notion of what the public policy of the State ought to be.

The orders appealed from should be reversed, and the motion denied with costs in all courts.

DESMOND, J. (dissenting). In 1928 appellant obtained a divorce from respondent. The judgment provided for weekly alimony payments. In 1938 (L. 1938, ch. 161) the Legislature of this State enacted a statute (now Civ. Prac. Act, § 1172-c, second sentence) which empowered the court in its discretion to modify a judgment of divorce by striking out its alimony provisions "upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man." The courts below, on sufficient proof have found that appellant was, on March 26, 1938 (the effective date of the statute hereinabove described) and thereafter, "habitually living with a man not her husband and holding herself out to be his wife." Acting within the terms of section 1172-c of the Civil Practice Act, those courts have modified the 1928 divorce judgment by striking therefrom the award of alimony. Now we are told that such an excision is beyond the

power of the courts, since, it is said, the statute, to save its constitutionality, must be read to permit such an operation only on judgments entered *after* the effective date of the statute, and not to judgments, like the one here involved, which were entered before the statute went upon the books. The rule of law cited as impelling us to that result is that which accords to certain judgments a finality beyond the reach of the Legislature, or the courts, so that the benefits decreed to a successful party by such a judgment become vested in that party, forever.

If all this be binding law, strange results follow. A wife who filed her divorce judgment in April of 1938 would find herself deprived of support from her former spouse if he could prove her guilty of unlawful cohabitation, while her erring sister, whose decree had been handed down in February of that year, would be safely beyond the reach of the statute. Each of those women would have secured her divorce and grant of alimony, originally, on proof of her husband's guilt and, inferentially at least, of her own innocence. Neither woman could have had any divorce or alimony at all if the divorce proceedings involving her and her husband had been brought after the meretricious relationship with another man, here proven, had begun. A conclusion that the lawmakers intended to make of our divorce laws, expressive as they are of deep moral convictions, so asymmetrical a pattern, should be avoided, if avoidance is possible. " Whatever the legislative purpose may have been, it cannot have contemplated such an incongruous result." (*Matter of Morse,* 247 N. Y. 290, 302.)

The jurisdiction of the courts in matters of divorce and alimony is derived exclusively from statute. (*Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456.) A statutory grant of jurisdiction to grant divorce judgments including alimony awards, would not, without more, authorize the modification of such a judgment, previously entered, as to its alimony features, since the judgment would have become final and in that sense would have created vested rights in the successful wife. (*Livingston* v. *Livingston,* 173 N. Y. 377.) Where authority to modify as to alimony was not expressly reserved by a statute in force before entry of judgment, or was not reserved in the judgment itself at the time of its rendition, those " vested rights " were beyond attack from Legislature or court. So, when in 1900, the Legisla-

ture attempted to bestow upon the courts the power to annul or modify directions for alimony "at any time after final judgment, whether heretofore or hereafter rendered" the statute was, as to judgments entered before its passage, inoperative (*Livingston* v. *Livingston, supra*). But this careful protection of the finality of alimony judgments was not based on any theory that they were akin to judgments on contract debts. Alimony ("alimonia-sustenance") means the continued support of a wife by her divorced husband. "The divorce with its incidental allowance of alimony simply continues his duty beyond the decree and compels him to perform it, but does not change its nature" (*Romaine* v. *Chauncey*, 129 N. Y. 566, 570). Alimony is not a property settlement or a finally arrived at division between husband and wife of the former's income. It is a device for enforcing our public policy that an innocent wife's sustenance by her guilty husband should be continued after the divorce. But it would be a faulty public policy which would enforce the husband's public duty of support and not the correlated public duty of the wife. The Legislature, by the statute we are examining, has ordained that the wife's right to continued support from her husband after divorce, shall be forfeited by such misconduct as here appears. Concededly, the enactment of such a statute is within the Legislature's competence. It seems plain the Legislature could not reasonably have intended, in 1938, to authorize such a forfeiture only as to wives divorced before that date. We concede that a statute might be considered unreasonable or invalid which contemplated such a forfeiture for immoral acts done *before* the statute's enactment. No such question is here. We are investigating only the validity of a forfeiture of alimony for wrong conduct *after* the statute's passing. We find no unconstitutionality in such a law.

We have seen that alimony provisions are immune from modification if the judgments of which they are a part contain no reservation of power to modify, and if they are entered at a time when no statute exists making such judgments subject to modification. But when the judgment in the present case was handed down in 1928, there was already on the books a statute (Civ. Prac. Act, § 1170) which in sweeping terms said that the court was authorized. at any time after a final judgment for

divorce, to annul, vary or modify an award of alimony contained therein. " The effect of the statute is to write a reservation into every final judgment of divorce. The jurisdiction of the court over the parties and over the incidental subject-matter is prolonged; and to that extent the action may be said to be pending within the meaning and intent of section 1169 of the Civil Practice Act " (*Fox* v. *Fox*, 263 N. Y. 68, 70). Jurisdiction of this judgment, therefore, remained in the court precisely as if the judgment itself had, as was formerly the practice, contained an express reservation of leave to apply at its foot for its modification (*Fox* v. *Fox, supra*). Thus when the divorce judgment with which we are here dealing was granted in 1928, it plainly was not final. It created no " vested rights " at all in appellant, since, by the statutory law then in force, it was expressly subject to future modification in the court's discretion. The rule of *Livingston* v. *Livingston, supra,* had no application to that judgment.

*Hayes* v. *Hayes* (220 N. Y. 596), announces no different rule. At the time the Hayes judgment was entered there was no statute authorizing modification because of the wife's immoral behavior, so that in that case, while the judgment was non-final, while it created no vested alimony rights and was open to modification generally, yet there could be found no express statutory grant of authority to modify it *for that particular reason*. That deficiency in the statutes was supplied in 1938, by the enactment of the second sentence of section 1172-c. Thereafter alimony judgments, long since deprived of their erstwhile finality, were specifically made alterable for the particular reason here assigned.

In the time of *Forrest* v. *Forrest* (9 Abb. Pr. 289), there was a broad and fundamental reason why a wife's alimony judgment could not be modified because of her misbehavior, that reason being the absence of any statute at all on the subject of modification. At the time of *Hayes* v. *Hayes, supra,* there was a narrower reason, *i. e.,* the absence of a definite legislative declaration that such misbehavior was one of the grounds on which could be exercised the general power to modify, which general power had been provided between the time of the *Forrest* case and the time of the *Hayes* case. Now the Legislature has made that express declaration and no reason at all remains why

there may not be modification for the precise cause relied on here.

We need not be fearful that we are here doing violence to any settled rules against retroactive application of statutes. The courts may, and in the present case did, give full and immediate effect to section 1172-c, without taking a single backward look. The misconduct for which the forfeiture of alimony was here imposed was misconduct after the date of the statute, and the alimony payments forfeited were those which were to come due in the future. In no real sense can such a use of the statute be considered to be retrospective (see discussion in *Sistare* v. *Sistare*, 218 U. S. 1, 24 *et seq.*).

The order of the Appellate Division should be affirmed, with costs.

LOUGHRAN, LEWIS and CONWAY, JJ. concur with RIPPEY, J., DESMOND, J. dissents in opinion in which FINCH, J., concurs; LEHMAN, Ch. J., taking no part.

Orders reversed, etc.