WINSLOW DRUMMOND *v.* Lou A. DRUMMOND

79-83                                    590 S.W. 2d 658

Opinion delivered December 17, 1979

*Dale Price,* for appellant.

*Ben Rowland,* of *Rowland & Templeton,* for appellee.

JOHN D. ELDRIDGE, Special Justice. The parties were divorced on May 9, 1973 by a decree of the Pulaski Chancery Court. The Court awarded custody of their three minor children to the Appellee and directed Appellant to pay alimony and child support.

Subsequently, on June 7, 1978, the Appellant filed a petition in the Pulaski Chancery Court seeking the custody of the children and an abatement of the obligation to pay child support and alimony. The petition also sought to relieve Appellant of the duty to maintain life insurance policies for the benefit of Appellee.

After pretrial procedures and hearing the trial court ordered a change in the custody of the children from the Appellee to the Appellant, but refused to terminate or modify the alimony payments or to relieve Appellant of his duty to make the life insurance premium payments. The insurance obligation was deemed to be contractual and not subject to change by the court. From this decision Appellant has appealed. The Appellee has not appealed from the order divesting her of the children's custody.

At the time of the divorce in 1973, the parties entered into a complete property settlement and support agreement which was incorporated into the decree. The provisions pertinent to this appeal are as follows: The Appellee was to have custody of the three children, Judith, Kathryn and Winslow, who were at that time age 11, 9 and 6½ years, respectively. Appellant was directed to pay Appellee $225.00 per month per child until the child reached age 21 years. The decree further provided that as each child reached the age of 21 the amount payable to Appellee as alimony for her support should be increased by $50.00 per month. Alimony was fixed at the sum of $600.00 per month. Both the amount of alimony and the child support payments were to be increased on January 1st of each year to correspond with the increase, if any, in the Cost of Living Index of the Bureau of Labor Statistics. Appellant was to create and convey to a trust three life insurance policies on his life with his wife and children as beneficiaries and to maintain them in force.

The Agreement was expressly provided to be non-contractual with respect to the provisions for alimony and child support and both parties reserved the right to apply to the court having jurisdiction for such revision of alimony and child support as future changes in the parties' circumstances might justify.

The testimony and the answers to requests for admissions given by Appellee establish that following the divorce she had engaged in sexual relations with two married men on several occasions. It was admitted that some of these episodes occurred in her residence in the absence of the children. Finally, on the nights of June 3-4 and June 6-7, 1978, Appellee permitted one of the men to spend the night with her in her home while the children were there. One of the children informed the Appellant of these facts. On the morning of June 7th he took the children to his home and on the same date filed the petition which is before us on appeal.

The trial court held that although the conduct of the Appellee warranted a change in custody, it did not constitute such a change of circumstances as to justify either a termination or reduction in the alimony payments. Such payments had escalated at the time of the hearing to $725.00 per month and were subject to a revision on January 1, 1979. The trial court further directed the Appellant to pay Appellee's attorney a legal fee of $1,000.00.

The appeal raises two issues: first, that the trial court erred in holding that alimony payments should not be reduced or terminated; and, second, that an attorney's fee to Appellee's attorney should not have been awarded.

The parties are graduates of Duke University, Appellant with a LL.B. degree and Appellee with a B.A. degree. The parties were married prior to Appellant's graduation from law school, and Appellee worked as a secretary during Appellant's last two years in law school, helping to support them. Since the parties moved to Little Rock, Appellant has engaged in private law practice and is a partner in a Little Rock law firm.

During their married life in Little Rock, Appellee attended to their home and children and was not employed.

Since the divorce, Appellee has taken Library Science and other courses at the University of Arkansas at Little Rock, completing approximately twenty semester hours. At the time of the hearing in August, 1978, Appellee was a full

time secretarial employee earning $600.00 per month, with take-home pay of $113.00 per week.

The first question which the court must decide is whether sexual misconduct (specifically adultery) on the part of a divorced spouse can justify the termination of alimony received from the former spouse. We do not think that it can, in the absence of other circumstances such as living openly with and being supported by a paramour or gross promiscuity amounting to prostitution. No such elements are present in this case. Alimony is not awarded as a reward to the receiving spouse or as punishment of the spouse against whom it is charged. It is an effort, insofar as is reasonably possible, to rectify the frequent economic imbalance in the earning power and standard of living of the divorced husband and wife. Its continuation is not dependent on the good conduct of either spouse. While each case must and should be governed by its particular facts, it can be stated as a general principle that alimony should be terminated or modified by circumstances which relate to its need by the recipient or the ability to pay by the spouse against whom it is assessed.

This is consistent with the rationale of the one Arkansas case which has considered this principle. In *Byrd* v. *Byrd,* 252 Ark. 202, 478 S.W. 2d 45 (1972), we held:

It is apparent that the reason for the rule which we have adopted in cases of remarriage [termination of alimony payments] does not apply in this instance, for there is no indication that Mrs. Byrd's supposed paramour has assumed any responsibility for her care and maintenance. Nor is it shown by the weight of the proof in the case at bar that Mrs. Byrd has assumed the other man's name and held herself out publicly as his wife. In that extreme situation at least two courts have approved a termination of the former husband's obligation to pay alimony. *Grant* v. *Grant,* 52 Cal. App. 2d 359, 126 P. 2d 130 (1942); *Coggins* v. *Coggins,* 289 Ky. 570, 159 S.W. 2d 4 (1942). In New York the same result has been reached by statute. *Waddey* v. *Waddey,* 290 N.Y. 251, 49 N.E. 2d 8 (1943).

In the court below the evidence was in sharp conflict. Even if we should accept Byrd's contention that he and his supporting witnesses established instances of immorality on the part of Mrs. Byrd, we are not prepared to say that a former husband is entitled to sit in judgment of his divorced wife's conduct, any more than she is entitled to take such a position with respect to his conduct.

In *Christiano* v. *Christiano,* 41 A. 2d 779 (Conn. 1945), the Connecticut Supreme Court of Errors held that the frequent public drunkenness of a divorced wife and many arrests did not justify the suspension or termination of her alimony. The court said:

. . . ''[T]he great weight of authority holds that, in the case of an absolute divorce, misconduct by a wife after the decree is granted is no ground for depriving her of alimony which has been awarded her, and this conclusion is most commonly put upon the ground that after the divorce she no longer is in any way responsible to her former husband for her conduct. [Citing among other cases, *Pauley* v. *Pauley,* 280 Ky. 66, 132 S.W. 2d 512; *Suozzo* v. *Suozzo,* 16 N.J. Misc. 475, 1 A. 2d 930; *Hayes* v. *Hayes,* 220 N.Y. 596, 115 N.E. 1040; and *Stanfield* v. *Stanfield,* 22 Okl. 574, 98 P. 334.]

The court, in *Christiano, supra,* aptly summed up the basic thread of these decisions as follows: "It is not the function of the Court in this civil action to attempt to serve as an agency for her moral regeneration."

The annotation in 6 A.L.R. 2d 853, 859, as supplemented, confirms the conclusion here reached·that misconduct of a divorced person per se, unless there are other elements present, should not serve as a basis for termination of alimony in the absence of inability of the divorced spouse to continue payment or lack of need on the part of the recipient spouse. *Horner.* v. *Horner,* 222 So. 2d 791 (Fla. Dist. Ct. App. 1969).

The second question which this Court must decide is

whether the circumstances in which the parties now find themselves have changed sufficiently since the date of the divorce in 1973 to warrant a modification of the terms of the original decree with respect to alimony. In this respect we are unable to agree with the ruling of the trial court.

After the divorce the Appellant remarried. His second wife had the custody of two minor children, ages 11 and 13, by a previous marriage. After the change in custody ordered by the trial court Appellant's three children were added to the family group. Thus, he now has the obligation to support his second wife, provide a home for five children between ages 11 and 18, and support, maintain and educate his own three children. His second wife is receiving some payments from her former husband for the support of Appellant's stepchildren.

Appellant's income from his law practice, although substantial, will not permit many luxuries after he has paid his income and other taxes, paid insurance, taxes and other expenses relative to his residence, and provided for his large family. In addition, he will very soon be faced with paying for the college education of his two oldest children.

The Appellee, on the other hand, is now freed from the obligation of caring for and supporting her three children. She has secured employment and has commendably begun post graduate studies which, if pursued, should enable her to obtain income substantially greater than she is now earning. The record indicates that she is a well educated, intelligent and articulate person with a substantial potential for improvement in her earnings.

It is our opinion that there have been changes in the circumstances of the parties sufficient to necessitate a modification of the alimony payable by the Appellant. The alimony will be reduced to $600.00 per month with no provision for escalation or reduction unless there should occur substantial later changes in the circumstances of the parties. We are motivated in this regard by the belief that the Appellee has herself the ability to increase her income by her own efforts. We are further persuaded by the needs of the three

children. The reduced alimony is to be effective on the first of the month following the date when this decision becomes final.

The third question for decision is the matter of attorney's fees to be paid to Appellee's attorney. We agree with the trial court that a fee of $1,000.00 is reasonable for the time and effort expended by the attorney on the issue of alimony termination or modification and this allowance should be affirmed. We further award him a fee of $750.00 for his services in connection with this appeal, to be paid by the Appellant. Costs of this appeal are assessed against the Appellant.

Affirmed as modified.

SMITH, FOGLEMAN, BYRD and HICKMAN, JJ., disqualified and not participating.

Special Justices J. L. SHAVER, JOHN B. HAINEN and JOHN BURRIS join in this opinion.

HARRIS, C.J., not participating.