Cite as 2024 Ark. App. 194

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-23-94

| | | |
|---|---|---|
| JODIE HARTMAN | APPELLANT | Opinion Delivered March 13, 2024 |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60DR-19-1563] |
| V. | | |
| CANDIE HARTMAN | APPELLEE | HONORABLE MACKIE M. PIERCE, JUDGE |
| | | AFFIRMED |

**CINDY GRACE THYER, Judge**

Candie and Jodie Hartman were divorced by decree entered October 26, 2022, after a sixteen-year marriage. Jodie appeals from the divorce decree, arguing that the Pulaski County Circuit Court abused its discretion (1) in its calculation of child support; (2) in its award of alimony; and (3) in its division of marital debt. We affirm.

Jodie and Candie were married on October 21, 2006. At the time Candie filed for divorce in April 2019, they had three minor children, MC1, MC2, and MC3.[1] In her complaint, Candie requested, in part, custody of the children, alimony, child support, and the division of marital property and debt. Jodie answered and counterclaimed, also seeking

---

[1]By the time they divorced, MC1 had reached the age of eighteen.

to have the marriage dissolved. During the course of the proceedings, the court appointed an attorney ad litem to represent the children's interests.

A final hearing on the divorce began on March 10, 2022. At the hearing, Candie testified that she lived with her three children (one who is now an adult) in a mobile home purchased by her brother on her dad's property and had done so for approximately thirteen months.

As for income, she stated that Jodie was an assistant battalion chief at the Sherwood Fire Department and that his usual shift is twenty-four hours on, forty-eight hours off. She said that, throughout their marriage, Jodie earned extra income from a body-shop business where he repaired and painted damaged vehicles and from a lawn company. She testified that, while the body shop-work had admittedly dwindled, Jodie still worked on cars and collected money for his work. She stated that he had worked on a car just prior to her filing for divorce and that he worked on a couple of cars each month even in his slow times. As for the lawn company, she stated that she was certain that he continued to mow lawns since their separation earning $480 a month in her estimation. Her sister-in-law, Megan Fortson, confirmed that Jodie performed body work and mowed lawns for money.

Candie also testified that they had several rental properties that produced income. One was rented for $650 a month; one was rented for $675 a month; and one was rented for $25 a month. She claimed that, during their separation, Jodie collected rent on those properties but did not divide the income with her. She testified that Jodie even admitted in discovery that he collected $1400 in rent each month. So, for approximately thirty-nine

months, she had not received any rental income from those properties.[2] She admitted, however, that she had not paid any of the expenses for those properties during that time period. She asked that she be reimbursed for her portion of the past rental payments.

As for her income, Candie testified that she is currently on disability due to her rheumatoid arthritis and accompanying neuropathy. She is on eight or nine different medications and requires three-hour infusions every eight weeks. She stated that she has been unable to work since 2010 and receives $949 a month ($1147.10 before deductions) in disability payments. Her only other source of income is child support.

She testified that due to her limited income, she is unable to afford everything and has to rely on her brother for financial assistance.[3] She also claimed that she had been forced to rely on her credit cards to make ends meet.[4] Credit cards in her name totaled $33,397.93, and the minimum monthly payments were $929.14. Jodie, on the other hand, had only $1100.20 in credit-card debt in his name. She also testified to a joint Dillard's credit-card debt of $7499.40. This brought their total marital credit-card debt to $41,997.53. She asked that the court order Jodie to pay the entire amount of marital debt because she could not afford to. She also asked for spousal support.

---

[2]According to Candie's testimony, Jodie collected $52,650 in rental income during their separation. Jodie stated in his discovery responses that he collected $54,600.

[3]She testified that she intended to sell the rental properties she received in the divorce in order to pay her brother back.

[4]She testified that she incurred charges on her credit cards for food, gas, electricity, Christmas gifts for the children, children's clothing, and items to set up her household.

As for insurance, she testified that the children are covered by ARKids First for their medical and dental insurance. She stated that Jodie had also purchased an AFLAC supplemental insurance policy and an additional dental policy. She stated that he had not provided her with any insurance cards on those policies.

As for Jodie's retirement, she testified that he has a LOPFI pension but that she had not received any documentation from Jodie as to the value of that account. She also testified that he had been contributing to a 457(b) account worth $15,472.65. She requested that the court award her half of the marital portion of those retirement accounts, if not more.

As for the child-support payments, Candie testified that Jodie insisted on personally hand delivering the support checks to her and required that she sign the backs of the checks in his presence. He would then take a picture of them after she had signed. She testified that, on one occasion, he flicked the check at her from the window of his car, it caught the wind, and blew underneath the car. When she went to retrieve it, he placed the car in reverse and started moving. If she had not moved her arm quickly enough, he would have run over her arm. As a result, she asked that his child-support payments be withheld from his paycheck.

On cross-examination, she admitted that she and the children continued to live in the marital home with Jodie until February 2021. She stated that during that time, she paid for household goods, food, life-insurance policies on the children, and the internet bill. She also admitted that they had been able to pay off their credit-card debt in 2012 after she received her disability settlement, but it was never completely paid off after that.

4

She also testified that after she left the home, Jodie moved his girlfriend and her son into his house. She stated that she was not opposed to the girlfriend living there because she acts as a buffer between Jodie and the children, but it did make her angry that he was supporting them while not providing her with any financial support other than the court-ordered child support.

Candie's brother, Christopher Fortson, testified that he had financially assisted his sister since her separation from Jodie by buying her a home and paying the mortgage and some of her bills. He stated that he would be unable to do that for the rest of her life. He stated that because his partner is unemployed due to COVID-19 and he has been helping his sister out financially, he had been placed in a financial bind and had had to incur credit-card debt for the first time in a long time.

The matter was continued until April 15, 2022. Jodie testified that since September 2021, he has lived in his separate residence with his girlfriend and her fifteen-year-old son. He stated that his girlfriend moved in because her rental house was being sold, and she had no place to stay. He testified that, although his girlfriend has a job, she does not pay any rent or utilities because he believes it is not her place to do so. He claimed that their living with him does not add to his expenses. He also testified that he had begun renovating his house during this time period.

As for income, he testified that he is employed as a battalion chief for the Sherwood Fire Department and had been with the fire department for twenty-four years. He stated that he is on salary as a fireman and may earn some overtime but that the overtime is not

guaranteed. He testified that the rental properties they owned bring in $1400 a month. He stated that he had mowed lawns for thirty years but claimed that he no longer mows lawns or repairs vehicles for money. He further testified that his LOPFI has no cash value because it is a pension plan and is based on his years of service at retirement. He contributes $100 a pay period to his 457(b) plan and had purchased supplemental health and dental insurance for the children.[5]

As for spousal support, he testified that he does not believe Candie is entitled to alimony because she has other means of financial support. He asserted that she lives beyond her means and has an unhealthy spending habit, although he could not identify which purchases were extravagant. He acknowledged that Candie cannot survive on her disability alone but insisted that the fact that her credit card minimum payments exceed her disability payments is proof that she is living beyond her means. He also claimed that he had already had to pay off $70,000 to $80,000 of her credit-card debt on three previous occasions during their marriage. He also took issue with the fact that Candie was allowing their adult son to live with her rent-free while he is in school. He asked that the court deny Candie's request for spousal support, claiming that he does not have the ability to pay it.

As for her child-support request, he asserted that he paid all the household bills while Candie and the boys lived with him. He later admitted that Candie had bought some of the groceries during that time but claimed that he paid the majority of the bills, including all the

---

[5]He testified that this AFLAC policy is basically a major accident/illness policy.

utilities and expenses on the rental properties. As for her testimony regarding his hand delivery of the child-support payments, he maintained that he filmed Candie receiving the checks only because he was concerned she would deny having received them. He also denied almost running over her with his car.

After considering the testimony and evidence presented, the circuit court granted Candie's request for a divorce and awarded her primary custody subject to Jodie's visitation. The court reserved a ruling on the issue of child support, alimony, the division of marital debt, and other matters, and the parties were invited to present posttrial briefs on those issues.

On May 2, 2022, Candie submitted her posttrial brief in which she submitted three separate options as to how the court could calculate child support and argued that the court should consider both rental income and Jodie's supplemental income in determining its award. She also submitted multiple options in determining the amount of alimony to be awarded, taking into consideration the amount of child support awarded. Finally, Candie argued that the court should order an unequal division of the marital property and debt to obtain an equitable result. In doing so, she requested that the court order Jodie to pay all the marital debt.

Jodie filed his posttrial brief the same day.[6] In his posttrial brief, Jodie argued that each party should be responsible for any and all debt accrued in his and her individual

---

[6]He filed an amended posttrial brief the next day.

names. He further argued that Candie is not entitled to an award of alimony. He asserted that (1) he does not have the ability to pay; (2) Candie will continue to receive her disability payments and had retained income-producing properties earning $800 a month gross pursuant to an agreed division of their rental properties; (3) it is unlikely his employment income will increase; (4) Candie will receive child-support income; (5) Candie's standard of living is not substantially different from her standard of living during the marriage or from Jodie's standard of living; and (6) Jodie will be individually liable for the mortgage debt associated with the marital residence.[7] Jodie's posttrial brief was silent regarding how child support should be calculated.

On August 23, 2022, the court issued a letter opinion outlining, among other things, its decision regarding child support, alimony, and the division of marital debt. When calculating Jodie's monthly gross income for child support, the court included not only Jodie's salary as a fireman but also $675 in rental income and $550 in imputed income for lawn mowing, auto repair, and miscellaneous work. The rental income included in the calculation made no allowance for insurance or other expenses related to the rental property. On the basis of the court's income calculations, the court determined Jodie's child-support obligation for the two minor children to be $1109 a month.

As for alimony, the court noted that the primary consideration in the award of alimony is the need of one spouse and the ability of the other spouse to pay. The court found

---

[7]It was undisputed that the marital home was Jodie's separate property.

that Candie clearly has a need and Jodie clearly has the ability to pay. The court also stated

that in making an award of permanent alimony, it had considered and adopted the factors

Candie set forth in her posttrial.[8] It then stated that factor number ten was most compelling

and "offensive" of all the factors listed. The court noted that Jodie had moved his girlfriend

and her son into the marital home and allowed them to reside with him rent-free, while

Candie was forced to move into a home purchased by her brother on her parents' property.

More specifically, the court found that, while Jodie did not require his girlfriend to

contribute financially to the household expenses, Candie has had to rely on financial

assistance from her brother and on the use of credit cards to live and provide for her children.

As to the marital debt, the court stated that deciding the case had been extremely

difficult due to the various financial circumstances and issues before it. The court again

---

[8]Candie asserted that permanent alimony was appropriate for the following reasons: (1) the parties' marriage was of long duration; (2) she is permanently, physically disabled; (3) Jodie is in good physical health and has no employment limitations; (4) Jodie is gainfully employed and will likely continue to earn substantially more income as he advances in his career, and he has a documented history of earning substantial supplemental income from multiple sources, including a lawn-care business, auto-body-repair service, rental properties, and selling personal items; (5) she will never have any employment income due to her permanent physical disability; (6) she will receive child support from Jodie for a maximum of only four years because the parties' youngest son will reach the age of majority and graduate high school; (7) Jodie's standard of living (as compared to their standard of living during the marriage) has not been impacted (and, arguably, has improved) since Candie moved out of the marital residence in February 2021; (8) she has incurred excessive credit-card debt and had to rely on the assistance of her brother in order to financially survive on her disability income; (9) she will likely continue to incur substantial medical expenses; and (10) Jodie will continue to reside with his girlfriend and her son, whom he permits to reside at the marital residence rent-free and without any financial contribution to any household expenses.

emphasized that Jodie had not been concerned with the dire financial situation Candie had faced since the divorce action was initiated, and such lack of concern was evidenced by the fact that (1) Jodie moved his girlfriend and her child into a home that he will receive free and clear of any claim by Candie; (2) he did so without requiring any financial assistance from his girlfriend; and (3) he claimed that it was his responsibility to provide for his girlfriend over his obligations to support his wife and family. The court then split the marital debt according to their percentage of total income. In doing so, the court noted that Jodie is able to earn more each month from various endeavors, but during the divorce and separation period had claimed to have earned little to no additional income from sources other than his primary employment. The court found Jodie's credibility lacking on this issue; stated it did not believe Jodie earns no additional income other than his pay as a fireman; and found that Jodie can, and most assuredly will, earn additional income as he has done throughout the marriage.

After setting forth the basis for its decision on the remaining issues, the court directed Candie's counsel to prepare a precedent in accordance with its letter ruling. Notably, the parties were advised to alert the court if there were any additional issues the court overlooked. Any objections were first to be directed to Candie's counsel, and if the objections could not be resolved, the parties were directed to schedule a Zoom hearing to discuss the objections.

On October 11, 2022, pursuant to the court's letter opinion, Candie's counsel filed a proposed divorce decree. Attached to the proposed decree was a child-support worksheet

10

showing how the parties' gross income was determined and calculating their respective child-support obligations. A line on the attached child-support worksheet, which specifically indicated that spousal support was a permissible deduction from the monthly income calculation, was left blank.

On October 24, 2022, Jodie filed his objections to the proposed decree. Relevant to this appeal, he objected to the specific amount of rental income used in determining child support and to the date he began paying child support. He made no further objections to the proposed divorce decree pertinent to this appeal.

The final divorce decree was entered on October 26, 2022. In the order, the court made several of the changes noted in Jodie's objections.[9] The order awarded Candie child support in the amount of $1109 a month and alimony in the amount of $1750 a month. As for the division of marital debts, the court found that the marital debt totaled $41,997.53 of which $40,897.42 was incurred by Candie. The court ordered Jodie to pay $29,562.20 of Candie's credit-card debt in addition to any individually held debt on his credit cards. Candie was ordered to pay the remainder, including the $7499.40 in debt incurred on the jointly held Dillard's card.

Jodie filed a timely notice of appeal from the court's decree. On appeal, he argues that the circuit court abused its discretion (1) in its calculation of child support; (2) in its

---

[9]This included the removal of a paragraph related to a prohibition on overnight guests; the transfer of title to MC2's vehicle upon payment of loan; and the closing of the Arvest Bank account to remove Jodie's name from the account.

award of alimony; and (3) in its division of marital debt. Each of these issues will be addressed in turn.

## I. *Child Support*

Jodie first challenges the circuit court's award of child support, asserting the circuit court (1) failed to consider the award of spousal support in its gross-income calculations; (2) failed to consider "ordinary and necessary expenses" in its inclusion of rental income in the gross-income calculations; (3) improperly imputed additional income in the gross-income calculation when he is neither unemployed nor underemployed; (4) failed to factor the cost of supplemental insurance into its child-support calculations; and (5) issued an improper advisory opinion concerning the treatment of any future payments made outside the clearinghouse.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Cathey v. Altazan*, 2023 Ark. App. 314, at 5, 669 S.W.3d 614, 617. However, a circuit court's conclusions of law are given no deference on appeal. *Id.* at 6, 669 S.W.3d at 618. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 5–6, 669 S.W.3d at 617–18. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and the court's findings will not be reversed absent an abuse of discretion. *Id.*, 669 S.W.3d at 618. An abuse of discretion generally occurs when the circuit court's discretion is applied thoughtlessly,

12

without due consideration, or improvidently. *Grynwald v. Grynwald*, 2022 Ark. App. 310, at 3, 651 S.W.3d 177, 180.

## A. Consideration of Spousal Support

Jodie first argues that the circuit court erred in failing to take into consideration the award of spousal support in its calculation of child support. Under revised Administrative Order No. 10, if a parent is paying spousal support and child support to the same person, then the amount of alimony a payee spouse receives shall be reduced from the payor's gross income and added to the payee's gross income for purposes of determining income under the child-support calculation. He argues that the circuit court did not do so here.

Jodie's argument, however, is not preserved on appeal because he never made this argument to the circuit court. The parties were invited to file a posthearing brief on the issues to be decided by the court. Jodie elected not to address the issue of child support in his brief, nor did he respond to the options for child-support calculations that Candie proposed in her posttrial brief. Then, when the circuit court issued its letter opinion setting forth its gross-income calculations for purposes of child support, Jodie again failed to object on this ground. When Candie submitted her proposed divorce decree incorporating the court's child-support calculations, Jodie objected only to the specific amount of rental income used in determining child support and to the date he began paying child support. This is despite the inclusion of a child-support worksheet detailing the court's calculation of gross income and despite a line item on the worksheet specifically designated for spousal support. Here, Jodie had ample opportunity to object to the court's calculations prior to the entry of the

13

divorce decree and did not do so. Arguments not raised at trial will not be addressed for the first time on appeal, and parties are bound on appeal by the scope and nature of the objections and arguments they presented at trial. *Rudder v. Hurst*, 2009 Ark. App. 577, at 13, 337 S.W.3d 565, 574.

## B. Rental-Property-Related Expenses

Jodie next argues that the circuit court included only the gross monthly rental payments in income and failed to take into consideration expenses related to those properties in violation of Administrative Order No. 10. Jodie argues that the court acknowledged that the rental properties incurred expenses, including taxes, insurance, and repair fees but failed to exclude these expenses in the calculation of income for purposes of the child-support guidelines. As a result, he contends that the parties' combined incomes were inflated, resulting in a higher overall support obligation.

Jodie, however, failed to provide any documentation related to those expenses. He did not document any of these expenses on his affidavit of financial means, and when asked, could not declare how much income he received from those rental properties after expenses. As a result, the court was provided with the amount of rental income the parties collected on their investment property but was left to speculate on the expenses related to those properties. Because the court had no basis on which to calculate expenses, it was left to include the entirety of the rental income in the child-support calculation.

Jodie also argues that the circuit court erred in assigning him $675 a month in rental income and Candie $725 a month in rental income. He argues that the evidence reflects

that Candie receives $750 a month in rental income and he receives only $650. However, as Candie states in her brief, Jodie fails to show how these minor discrepancies affected the amount of child support owed.

## C. Imputation of Income

Jodie next argues that the circuit court erred in imputing income to him because he is neither unemployed nor underemployed. Pursuant to the guidelines, income may be imputed to a parent if the court finds that the parent is unemployed or underemployed. Jodie contends that because there was no evidence that he was either unemployed or underemployed, the court's imputation of income was erroneous.

Again, Jodie failed to raise this specific argument with the circuit court. While he did argue to the circuit court that he no longer engaged in his auto-body work or mowing businesses and, therefore, no longer earned income from them, he did not argue, as he does here, that the court erred in the imputation of income or the amount imputed to him. Again, Jodie had ample opportunity after the court's letter opinion to object to the court's award and to ask for reconsideration, arguing that the court could not impute income because he was neither unemployed nor underemployed.  He did not do so.

In any event, there was evidence presented that Jodie worked one out of every three days as battalion chief for the fire department, performed body work on cars, and that for thirty years before Candie moved out of the residence, he supplemented his income mowing yards. While Jodie testified that he is no longer engaging in the latter two businesses, the circuit court found his testimony to be not credible. As stated above, we give due deference

15

to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony.

## D. Supplemental Insurance

Jodie next argues that the circuit court erred in failing to deduct his payments for the children's supplemental health-insurance policy. He argues that the guidelines provide that health-insurance premiums shall be added to the worksheet and must be considered by the court when determining the total child-support obligation.

Jodie readily admitted at trial, however, that the AFLAC insurance policy is a supplemental accident policy, not health insurance. It is a policy that pays out a certain amount to the policyholder above and beyond what is covered by health insurance upon an accident or emergency. Under that policy, AFLAC will pay Jodie if the kids become ill and have to be hospitalized. Jodie acknowledged that it does not pay for the children's routine doctor or dental visits. The children's actual health insurance is covered by ARKids First and is provided at no cost to either party. Moreover, even if the AFLAC policy is considered supplemental health insurance, nothing in Administrative Order No. 10 requires the court to deduct the cost of supplemental health insurance from the calculation of child support. Thus, the court did not abuse its discretion in the calculation of child support on this basis.

## E. Advisory Opinion

Jodie's final argument with respect to the court's award of child support relates to the court's statement that any funds paid outside the clearinghouse would be considered a gift.

16

Jodie claims this amounts to an improper advisory opinion as to a future hypothetical situation.

Here, the circuit court did not render an impermissible advisory opinion. A decision that cannot affect the legal rights of the parties is an impermissible advisory opinion as are opinions on abstract legal questions. 16 C.J.S. Constitutional Law § 390 Westlaw (database updated Mar. 10, 2024). At the hearing, Candie presented evidence that Jodie would hand deliver the child-support payments to her and record their interactions. She testified he once almost ran over her arm when she leaned over to pick up a check that had fallen to the ground. Jodie testified that he felt it necessary to hand deliver the support payments and record their interactions because he believed Candie might not deposit the checks and claim he had not made the required payments. To prevent a future dispute over the payment of child support, the court ordered that all payments be made through the clearinghouse. Thus, the court's statement clearly related to an issue in dispute and was not an impermissible advisory opinion.

Regardless, Jodie never made this argument to the circuit court, despite having the opportunity to do so. He made multiple objections to the proposed order that contained the same disputed language but did not make the objection he now asserts on appeal. Issues not raised or ruled on in the circuit court will not be considered for the first time on appeal. *In re Est. of Reinkoester*, 2023 Ark. App. 517, 678 S.W.3d 97; *Holliman v. Johnson*, 2016 Ark. App. 39, 480 S.W.3d 903.

II. *Spousal Support*

17

Jodie next maintains that the circuit court erred in its award of alimony. He contends that, in awarding Candie $1750 a month in permanent alimony, the court failed to consider his ability to pay and only did so as a means of punishing Jodie for marital misconduct.

First, he claims that the amount awarded does not rectify the economic imbalance between the parties because he cannot afford to pay $1750 a month in alimony and because the court's calculation grossly overcompensates Candie for the inequity in the parties' earning abilities. He further argues that Candie was awarded half the marital assets, including rental properties, and half of his marital share of his LOPFI pension and his Arkansas Diamond 457(b) retirement plan. Thus, she will gain a significant boost in income once he retires.

He further contends that the court based its alimony award on facts unsupported by the record. For example, the court stated that Candie had amassed substantial credit-card debt because she could not afford to eat and keep a roof over her head on $900 to $1000 a month. However, Jodie claims it is impossible to determine how much of the $40,000 in credit-card debt preceded her separation from Jodie and how much was accrued after. He further contends that the circuit court had no basis for concluding that Candie would likely incur more medical expenses in the future.

Finally, Jodie argues that the court awarded Candie an excessive amount of spousal support as a means of punishing him for his "offensive" actions in moving his girlfriend and her son into his home before the divorce was final. He points to the court's statements from the bench chastising him for the example his actions set for his children.

The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Chekuri v. Nekkalapudi*, 2020 Ark. 74, at 16, 593 S.W.3d 467, 477. Alimony is not awarded as a reward to the receiving spouse or as punishment of the spouse against whom it is charged. *Drummond v. Drummond*, 267 Ark. 449, 453, 590 S.W.2d 658, 661 (1979). We have held that the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Chekuri*, 2020 Ark. 74, at 16–17, 593 S.W.3d at 477. In addition, the following secondary factors should be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both parties; (11) the duration of the marriage; and (12) the amount of child support. *Id.* at 17, 593 S.W.3d at 477.

A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion; an abuse of discretion is discretion exercised thoughtlessly and without due consideration. *Roberts v. Roberts*, 2023 Ark. App. 438, 676 S.W.3d 381.

Jodie's claim that the circuit court awarded alimony to punish him for his marital misconduct is misplaced. In its award of alimony, the court stated that it had considered the requisite factors in making an award of alimony and determined that those factors substantiated an alimony award. The court did note that Jodie's decision to financially provide for his live-in girlfriend while forcing his disabled wife to rely on financial assistance from family and credit cards to survive was offensive. However, rather than viewing this as a decision to punish Jodie, it could also be seen as the court's awareness that he has an ability to provide for someone other than himself and that he is voluntarily reducing his disposable income by financially supporting his girlfriend and her son. Jodie testified that his girlfriend is gainfully employed and was living on her own and paying her own rent prior to moving in with Jodie. Jodie testified that he did not require her to contribute to the household because he believed it was his responsibility to do so. Thus, the record does not demonstrate that the circuit court's rulings were motivated by a desire to punish Jodie; therefore, we reject this contention.

As for his claim that he cannot afford to pay the alimony award on the basis of his net take-home pay, his calculations fail to take into account the additional income the court determined he is or could be making from his side businesses. Moreover, his claim that Candie will gain a substantial boost in income once he retires is not supported by the record. He presented no testimony as to how much his pension would be worth upon retirement. Additionally, while Jodie claims that Candie received income-producing property in the divorce, Candie testified that she intended to sell the property in order to reimburse her

brother for the money he had loaned her. As to her medical expenses, the circuit court heard evidence that Candie has rheumatoid arthritis and is unable to work. She is under the regular care of a rheumatologist and is on eight or nine different medications for her disease.

Here, the circuit court considered all the factors when making its alimony award, including the length of the parties' marriage, Candie's disability, and her ability to live solely on her disability income. The court also took into account the respective incomes of the parties and found that Jodie has the ability to pay alimony to Candie. These facts are supported by the evidence presented at trial. Because the circuit court considered all the factors and based its decision on the facts presented at trial, the court did not abuse its discretion in awarding alimony.

III. *Division of Marital Debt*

Finally, Jodie argues that the circuit court erred in ordering him to pay 73 percent of the parties' marital debt when the assets were equally divided between them. He contends that, taking into consideration his child-support and alimony obligations, his net income is substantially less than Candie's.

An allocation of the parties' debt is an essential item to be resolved in a divorce dispute, and it must be considered in the context of the distribution of all the parties' property. *Williams v. Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003). A circuit court's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Id.* It is not erroneous to

determine that debts should be allocated between the parties because of their relative ability to pay. *Id.*

Arkansas Code Annotated section 9-12-315 (Repl. 2020) provides that all marital *property* shall be distributed one-half to each party unless the court finds such a division to be inequitable, and when property is divided unequally the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter. But it is well settled that section 9-12-315 does not apply to the division of marital debts. *Williams, supra.*

Here, Candie testified that the purchases she made on the credit cards were for essential items, like food, gas, and clothing for the children, even while they were separated but living in the same household. Jodie testified that Candie has a spending problem and that the credit-card bills were due to inappropriate and excessive spending. He did not, however, present any documentation to support his claims, and the circuit court found that his testimony was not credible. Having reviewed the evidence before us, it is clear that the circuit court did not abuse its discretion in its division of the marital debt.

Affirmed.

ABRAMSON, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. As stated in the conclusion of the majority opinion, I do agree with the holding. What is not stated, however, is my reluctance. I agree that the result we have announced here is merited; indeed, it is even mandated by our

standard of review. I write separately to highlight the importance of the decision today as both a cautionary tale and a warning. The requirement of issue preservation is ever present in our work. It is a well-reasoned doctrine. We should not review a decision by the trial court when that court has not had the opportunity to rule on it first. *Grynwald v. Grynwald*, 2022 Ark. App. 310, 651 S.W.3d 177 (recognizing that an argument not first presented to the trial court for a ruling is not preserved and thus not addressed on appeal). If this case had been presented to us in a different posture, i.e., had there been a trial and then a decision issued by the court—with nothing in between—I would argue vociferously that Jodie's arguments were, in fact, preserved and properly before us. Then, I would steadfastly maintain that the trial court erred by not taking into account spousal support when setting child support. The case would be reversed on that ground alone in my opinion.[1]

However, as stated in the majority opinion, that is not the situation before us. Jodie had multiple opportunities to provide input into the decision but failed to do so. We are not, with the majority opinion, requiring postjudgment motions to preserve an issue for appeal. The facts of this case show that the matter was ongoing after the hearing considering the parties' posttrial motions, the trial court's letter opinion, and opposing counsel's

---

[1]The same *may* be said for the imputed-income issue. Jodie's assertion that he worked full time (sixty hours a week) was not challenged. The trial court, in essence, ordered him to work more than full time. As stated in the majority opinion, the purpose of imputing income is to account for the situation in which one is underemployed or unemployed. Jodie's situation is neither.

proposed orders, and there were ample indications that the child-support calculations were not correct as submitted.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*Kamps & Griffis PLLC*, by: *Adrienne M. Griffis*, for appellee.